PROVIDENCE–WASHINGTON INS. CO. v. OWENS. (No. 9026.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 15, 1919.)

1. JUDGMENT ⚖═951(1) — RES ADJUDICATA — BURDEN OF PROOF—MATTER DETERMINED.

Where a verdict was general and fails to show upon which count in complaint recovery was awarded, burden is upon one in a subsequent suit to show by evidence that recovery was upon count on which he bases a plea of res adjudicata.

2. JUDGMENT ⚖═622(2) — RES ADJUDICATA — MATTER PROPER FOR SET-OFF.

It was not necessary for an assured, in an action by insurer, to assert his right to a rebate, and he could subsequently sue therefor, where the only issue in the first suit was the amount of the premium.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Thomas B. Owens against the Providence-Washington Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

See, also, 207 S. W. 666.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

R. M. Rowland and Lassiter & Harrison, all of Ft. Worth, for appellee.

DUNKLIN, J. The Providence-Washington Insurance Company has appealed from a judgment in favor of Thomas B. Owens for return premiums, claimed by plaintiff to be owing to him under and by virtue of the terms of a certain insurance policy covering risks of loss and damage on land and sea to cotton shipments from American ports to Europe and other foreign countries.

The policy covered shipments of cotton made by Owens during the season of 1914–1915, and contained, among others, the following stipulations:

"To cover all cotton in the United States purchased by assured or for their account, attaching from the moment the cotton becomes the property of the assured or legally at their risk, provided, however, that no cotton shall be covered hereunder prior to actual delivery to the assured or their agents, unless specifically identified by marks and numbers or other designation in possession of the assured or mailed to the assured prior to loss.

"Held covered, at a premium to be arranged, in case of deviation or change of voyage or transfer to other steamers, provided notice be given to the assurers as soon as known to the assured. * * *

"The assured are authorized to issue certificates in duplicate and countersign the same, covering shipments insured hereunder, subject to the terms and conditions of this policy, and making loss, if any, payable to the holder thereof, provided, however, that memoranda of such certificates shall be mailed to L. A. Wight & Co., New York, N. Y., on the day of issue, and it is hereby agreed that the amounts and values applicable to this policy, and that said certificates shall represent and take the place of the original policy and convey all the rights of the assured (for the purpose of collecting any loss or claim) as fully as if the property were covered by a special policy direct to the holder of the certificate. * * *

"This policy also covers the risk of country damage on shipments insured hereunder to Europe, Japan, China, India or Manila, subject to settlement at destination, in accordance with customs and usages of the port of destination, unless otherwise specified in certificate, but no claim for loss or damage to cotton picked or reconditioned in the United States nor for any cost or expense in respect of such picking or reconditioning shall be recoverable hereunder. * * *

"In case the aggregate payments in respect of claims for country damage on shipments to Europe, Japan, India, China, and Manila do not exceed one-fourth per cent. on the total sum insured against country damage on such shipments, and provided that the policy has not been canceled by the assured prior to 31st August, 1915, to return the difference between the equivalent of said one-fourth per cent. and the aggregate amount of claim so paid, such return to be payable only after the expiration of four months from the date of last shipment and after the settlement of all outstanding country damage claims."

The respective rates of premiums charged for shipment to different foreign countries were stipulated in a rate sheet attached to and made a part of the policy, also the names of certain ships upon which the shipments might be made. It was also stipulated that shipments might be made on "other approved steamers." Following the names of different ports to which shipments might be made the rate sheet contained the following stipulation:

"To add—1/16% for shipments to Dunkirk, Barcelona, Malaga, Ferrol, Lisbon and Marseilles.

"1/4% for shipments to Italian ports, or to Oporto, Christiana, Bergen, Malmo, Gothenburg or Copenhagen. 1/8% for transshipment at any of the above named ports or in the United Kingdom. Shipments to other continental ports subject to such additional rates as may be advised."

The statement of facts contains a written agreement made by the parties upon the trial of the case, from which it appears that during the season covered by the policy the total amount of insurance issued was $2,480,086, and including in that amount a cargo of cotton shipped in the steamship Dacia of the value of $764,946. .

This suit was for a balance of $1,912.36 with interest thereon as a balance due plaintiff for return premiums under and by virtue of the stipulation in the policy for return premiums, and in the agreement of counsel the defendant admitted liability in that amount, unless the plaintiff was barred from a recovery under and by virtue of a judgment rendered in the United States District Court for the Southern District of New York on July 7, 1916, in the case of Providence-Washington Insurance Company against Tom B. Owens, for the sum of $22,948.38, plus $72.74 interest. Accordingly, the only question presented upon this appeal is whether or not defendant's plea of res adjudicata should have been sustained.

We shall not undertake to set out in full the pleadings in the former suit. It is sufficient to state only the substance of the issues presented. Attached to plaintiff's complaint was a copy of the insurance policy, with its accompanying riders made a part thereof, including rate sheets, etc. It was alleged that by the terms of the policy it was agreed between the parties thereto that premiums upon all shipments of cotton upon approved steamers between ports, specified in the riders attached to the policy, were to be computed according to rates therein stipulated, and that premiums to be charged for shipments upon steamers not approved by the insurance company, or between ports not specified, should be fixed by agreement between the company and Owens. According to further allegations in that complaint Owens issued insurance certificates upon 11,000 bales of cotton, which he shipped on the steamship Dacia from Galveston, Tex., with Bremen, Germany, as the port of destination, but the destination was later changed to Rotterdam, Holland. The amount of insurance indicated by said certificates was $764,946. Said certificates were then negotiated by Owens to a purchaser or lienholder, for value, and became a valid and binding obligation upon the insurance company.

It was further alleged that when the company's insurance brokers in New York were notified of the issuance of the certificates of insurance on that cargo, the president of the company immediately wired Owens that the company would not approve the Dacia for a trans-Atlantic shipment, but, through a desire to assist it could arrange for insurance not to exceed $75,000, at a rate which the president of the company believed would be satisfactory to Owens. The telegram further stated that if Owens should insist on the shipment going forward upon the Dacia, he would be charged a premium of 50 per cent. of the value of the cargo over and above $75,000.

According to further allegations in the complaint the Dacia had formerly belonged to a corporation organized under the laws of Germany, and was registered as a German ship, flying the German flag. Between December 1, 1914, and January 1, 1915, it was purchased by a citizen of the United States. and transferred to the American registry, flying the American flag, the purchase and transfer occurring subsequently to August 15, 1914, and during the existence of the war between the empire of Germany on the one. side and Great Britain and France on the other. The name of the steamship was intended to be changed to Martha, but the change was never effected.

It was further alleged that during the period covered by the policy the port of Rotterdam was not a port mentioned in any of the riders attached to the policy, and the Dacia was not a ship approved by the insurance company, or included in the lists of ships specially mentioned therein, and therefore the rate of premium for such insurance was not covered by the policy, but was to be determined by mutual agreement between Owens and the company.

It was further alleged that after receipt of the telegram above mentioned, Owens made no reply thereto, and that by thereafter forwarding the shipment to Rotterdam upon the Dacia he impliedly bound himself for the payment of the 50 per cent. premium demanded in the telegram from the company.

It was further alleged that during the voyage of the ship she was seized by a French man-of-war and taken as a prize of war to the port of Brest in France.

It was further alleged in the complaint that by reason of the premises, already stated, Owens became liable to the company for the sum of $382,473 as premiums on the Dacia shipment, the same being 50 per cent. of the entire value of the cargo. In another count in the complaint it was alleged that Owens was bound by an implied obligation to pay a reasonable premium upon the Dacia cargo, which was also alleged to be 50 per cent. of the value of the cargo, in the absence of any written agreement for such insurance; in other words, this count was upon a quantum meruit.

In the answer filed by Owens to said suit in the federal court in New York he admitted the issuance of the policy of insurance as alleged in the company's complaint. He also admitted the shipment of the cotton on the Dacia from Galveston; that he received the telegram alleged in plaintiff's complaint; that after the receipt of the telegram he continued the loading of the cotton at Galves-

ton, and changed the destination of the cargo from Bremen to Rotterdam, and made the certificates of insurance conform to that change. He admitted further that the ship was seized and taken as a prize by a French man-of-war. But it was further alleged that it was agreed between the agents for the parties to the insurance contract that the premiums to be paid for insurance should be computed in conformity with the uniform standard conditions, terms, and rates adopted by the various insurance companies, including the plaintiff; that during the month of September, 1914, those companies sent to the brokers generally, and to the brokers acting for Owens, a printed schedule of rates on cotton shipments substantially in the form of that attached to the policy; and that those companies, as well as the plaintiff company, did issue during the months of December, 1914, and January, 1915, insurance on shipments of cotton to Bremen at a rate varying from 2½ per cent. to 3 per cent. on approved direct steamers that were not regular liners; that those companies also gave general notice that shipments to Rotterdam might be included in the schedule above referred to, at a rate of ¼ of 1 per cent. above the rates named in the schedule for shipments to Liverpool; and that plaintiff company sent a copy of such notice to Owens.

It was further alleged that prior to the sale of the Dacia by its German owners it had been approved by those companies as a first-class liner, and that it was a custom with those companies, and also the plaintiff company, that when such a vessel was sold to an individual owner and became a tramp vessel she automatically became an approved tramp, and included within the class of approved, direct steamers between ports named in the schedule of rates on cotton shipments attached to the policy, and by reason of the premises Owens was entitled to issue the insurance certificate on the Dacia cargo at a premium rate not exceeding 3 per cent. to Bremen, or to Rotterdam, at a rate of ¼ of 1 per cent. in excess of the rate of premium on shipments to Liverpool, aggregating $1^{1}/_{16}$ per cent., and that the same constituted a reasonable and fair rate of premium.

It was further alleged that Owens declined to accede to the demand of the company for 50 per cent. premium by reason of his contention that such demand was in violation of the terms of the contract of insurance.

[1] Upon the trial of the case in the federal court of New York before a jury the insurance company recovered a judgment against Owens for the sum of $22,948.38, which judgment became final. The amount so allowed was equivalent to 3 per cent. premium on the Dacia cargo, which was not a rate specified in the rate sheet attached to the policy. And appellant insists that it appears from such a verdict that the recovery in the former suit was upon the count in its complaint in which a judgment was sought upon a quantum meruit, and that it was not upon the count in which a recovery was sought upon the contract of insurance in connection with the correspondence between the parties relative to the shipment upon the Dacia, and that therefore the stipulation in the insurance contract for a return of premiums paid thereunder, and upon which the present suit is based, has no application. That contention cannot be sustained, since the verdict and judgment in the former suit is general and fails to show upon which count in the complaint the recovery was awarded, and since in the present suit no evidence was offered by the insurance company to show which one of those counts was in fact sustained. The only evidence offered to sustain the defense of res adjudicata was the pleadings filed in the former suit with exhibits consisting of the policy and schedules, rate sheets, etc., constituting parts of the contract of insurance, attached, and the verdict and judgment. The burden was upon the company in the present suit to sustain its plea of res adjudicata, and, as said in 15 R. C. L. p. 950, § 454:

"Where there are two or more issues in a case, and all are decided in favor of the same litigant, the court may rest its decision on them jointly, in which event the decision of one is no less necessary or material than the decision of the other issue, and the judgment is treated as conclusive upon both. Not infrequently, however, the court in rendering judgment leaves it ambiguous and uncertain as to which of several issues was the one determined in arriving at the decision of the case; and, while the authorities are not harmonious, the weight of authority is to the effect that a judgment which may have resulted from a determination of either one or more separate issues does not constitute an adjudication as to either, where it is not shown upon which it was in fact based. Under this view it must clearly appear from the record in the former cause, or by proof by competent evidence consistent therewith, that the matter as to which the rule of res adjudicata is invoked as a bar was, in fact, necessarily adjudicated in the former action; and a plea of res adjudicata is insufficient, unless it appears that the matters stated in the complaint, and alleged to have been unavailingly set up as a defense in a former action, were positively decided in such former action against the present plaintiff. Therefore a party desiring to avail himself of the judgment as conclusive evidence upon some particular fact must show affirmatively that it went upon that fact, or else the question is open for a new contention."

See, also, 23 Cyc. 1534.

Furthermore, in the company's complaint, filed in the former suit, it was expressly conceded that the insurance certificates issued upon the Dacia cargo were valid and binding upon it while in the hands of innocent purchasers, and the same admission is made by the company in the present suit. We fail to

perceive how any purchaser of those certificates would stand in a better position than Owens himself if the insurance policy is to govern its validity since they contained the following stipulation:

"This certificate is issued subject to the terms and conditions of the policy, and represents and takes the place of the policy, and conveys all the rights of the original policy holder (for the purpose of collecting any loss or claim), as fully as if the property were covered by a special policy direct to the holder of this certificate, and free from any liability for unpaid premiums."

If the issuance of the certificates of insurance was authorized by the terms of the written contract of insurance, then the stipulation for rebate to Owens of premiums paid for the insurance applies, regardless of the rate of premiums.

[2] From the foregoing it appears that the only issue involved in the former suit was the amount of premium due by Owens to the insurance company. The demand for rebate premium asserted in the present suit could have been urged by way of cross-action in that suit, but that was not done. Neither was that issue necessarily involved in the demand asserted by the company in the former suit. In the case of Philipowski v. Spenser, 63 Tex. 604, our Supreme Court announced the following:

"As a general rule, a former judgment will not be a bar to further litigation, unless the same vital point was put directly in issue and determined, or was fairly within the scope of the pleadings. 6 Wait's Act. & Def. 785, and cases there cited.

"A judgment or decree is not conclusive as to collateral questions, nor of any matter to be inferred by argument from the judgment. 6 Wait's Act. & Def. 785, and authorities cited. It is also there said: 'The rule, as sometimes stated, is that a judgment is not technically conclusive of any matter, if the matter is not such that it had of necessity to be determined before the judgment could have been given."

And in 23 Cyc. p. 1204, the following is said:

"A matter is not in issue in the suit which was neither pleaded nor brought into contest therein, although within the general scope of the litigation, and although it might have been determined the judgment if it had been set up and tried."

To the same effect are the following authorities: Manning v. Green, 56 Tex. Civ. App. 579, 121 S. W. 721; Berger v. Kirby, 135 S. W. 1122; Bank & Trust Co. v. Rice, 185 S. W. 1047. In 23 Cyc. p. 1202, the following is said:

"As a general rule, where a defendant has an independent claim against plaintiff, such as might be either the basis of a separate action or might be pleaded as a set-off or counterclaim, he is not obliged to plead it in plaintiff's action, although he is at liberty to do so; and if he omits to set it up in that action, this will not preclude him from afterwards suing plaintiff upon it."

Even though Owens could by cross-action have asserted in the former suit the claim presented in the present suit, yet, under the authorities above cited, which we believe announced the correct rule, we are of the opinion that the judgment in the former suit is not a bar to plaintiff's recovery in the present suit, since the claim in the present suit is a cause of action separate and distinct from the demand for premiums asserted by plaintiff in the former suit which was the only issue involved.

For the reasons noted all assignments of error are overruled, and the judgment is affirmed.