[Civil No. 2450. Filed October 5, 1926.]

[249 Pac. 755.]

# PERRY M. WILLIAMS, as Receiver of the BANK OF PHOENIX, Appellant, v. ERNEST R. HALL and NATIONAL SURETY COMPANY, a Corporation, and STATE OF ARIZONA, Appellees.

1. PARTIES.—Under Civil Code of 1913, paragraphs 409, 410, receiver of insolvent bank *held* properly brought in as defendant to action by state against Secretary of State and his surety to recover fees improperly deposited, where he was claiming proceeds of securities in hands of receiver.

2. ABATEMENT AND REVIVAL.—PENDENCY OF ACTION BY STATE AGAINST RECEIVER OF BANK TO RECOVER MONEYS DEPOSITED BY SECRETARY OF STATE HELD NOT GROUND FOR ABATEMENT OF ACTION BY STATE AGAINST SECRETARY OF STATE TO WHICH RECEIVER WAS MADE PARTY.—Pending action by state against receiver of insolvent bank to recover state moneys deposited by Secretary of State in secured account *held* not ground for abating action by state against Secretary of State and his surety to recover the same moneys, particularly where practical consolidation of the two actions was effected by making receiver a party defendant in the latter.

3. JUDGMENT.—Whenever judgment in a prior suit which may have involved more than one issue is offered in bar, burden is on pleader to show that first suit was decided on its merits, and that same issue was decided therein as is raised in second case.

4. JUDGMENT — ORDER IN RECEIVERSHIP PROCEEDINGS AGAINST BANK DENYING SECRETARY OF STATE'S PETITION FOR RETURN OF SECURITIES HELD NOT RES ADJUDICATA IN SUBSEQUENT ACTION, WHEN QUESTION INVOLVED WAS NOT SHOWN TO HAVE BEEN DETERMINED.— Order of court having charge of receivership proceedings against bank denying petition by Secretary of State for return of securities previously held by him, as security for deposit, *held* not

1. See 20 Cal. Jur. 531.

3. Burden of proof that matter is *res judicata,* see notes in 44 Am. St. Rep. 563; 2 Ann. Cas. 655. See, also, 15 Cal. Jur. 211; 15 R. C. L. 1049.

4. Power of bank to pledge assets to secure deposit, see note in Ann. Cas. 1915C, 171.

*res adjudicata* of Secretary's rights, in subsequent action by state against Secretary of State in which receiver was made a party defendant, it not appearing that question of application of proceeds was determined.

5. CONTRACTS — SECRETARY OF STATE MAKING UNLAWFUL DEPOSIT OF STATE MONEY AND ACCEPTING SECURITY THEREFOR, WHICH WAS LATER RETURNED TO BANK TO BE SOLD, HELD ENTITLED AFTER SECOND CLOSING OF BANK TO RETURN OF SUCH SECURITIES OR THEIR PROCEEDS.—Where bank receiving unlawful deposit of state moneys by Secretary of State turned over to him securities to protect such deposit, which were after failure of bank and its reopening returned to it for sole purpose of being sold, *held*, after second closing of bank Secretary of State was entitled to return of such securities or their proceeds, despite the illegality of the deposit.

6. CONTRACTS.—Where contract otherwise void as against public policy is made by a trustee for an innocent third party, the other party to the contract may not set up invalidity of contract as against a recovery by or for the beneficiaries.

7. BANKS AND BANKING.—A bank has corporate power to borrow money and to pledge its own securities as collateral for the loan, and hence may give security for deposit.

8. BANKS AND BANKING.—One of the ordinary powers of president and cashier of bank is to borrow money in the regular course of business and pledge bank's property, such as commercial paper, in payment of the debt.

9. PLEDGES—RETURN TO BANK OF SECURITIES PLEDGED FOR SOLE PURPOSE OF HAVING THEM SOLD FOR BENEFIT OF DEPOSITOR HELD NOT TO TERMINATE PLEDGE.—Where Secretary of State, making unlawful deposit of state moneys accepted security therefor, and, after closing of bank and its reopening, returned such security to bank for sole purpose of having it sold for his benefit, such return of securities to bank did not terminate pledge.

---

. See 31 Cyc., p. 470, n. 74, 79.    (2) 1 C. J., p. 67, n. 67.    (3) 34 C. J., p. 1067, n. 79.    (4) 34 C. J., p. 932, n. 29.    (5, 6) 13 C. J., p. 498, n. 29, p. 506, n. 77 New.    (7, 8) 7 C. J., p. 548, n. 26, p. 592, n. 66, 70, p. 641, n. 99.    (9) 31 Cyc., p. 819, n. 51.

APPEAL from a judgment of the Superior Court of the County of Maricopa. W. R. Chambers, Judge. Affirmed.

---

8. Powers of bank president, see notes in 1 A. L. R. 693; 9 A. L. R. 1146. See, also, 3 R. C. L. 450.

9. See 21 Cal. Jur. 351.

Mr. J. H. Moeur and Mr. J. Early Craig, for Appellant.

Mr. John W. Murphy, 'Attorney General, Mr.' Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, and Messrs. Stockton & Perry, Mr. Earl F. Drake and Messrs. Sloan, Holton, McKesson & Scott, for Appellees.

LOCKWOOD, J.—Ernest R. Hall became Secretary of State January 1, 1921, and gave the required statutory bond of ten thousand dollars in the form provided by law, with the National Surety Company, a corporation, as surety thereof. As Secretary of State, he collected certain fees which, under the law, were the property of the state, and were required to be turned over by Hall to the State Treasurer. Instead of doing this immediately upon their receipt, he deposited them in the Central Bank of Phoenix and accounted with the Treasurer from time to time therefor. The bank closed its doors in March, 1921, there being on deposit with it to the credit of Hall of such state moneys approximately sixteen thousand dollars. Before Hall opened this account with the bank, and from time to time thereafter, he took from it certain securities to protect him in making the deposits. When the bank closed, he turned these securities over to the State Treasurer, together with a check on the bank for the amount on deposit; but the treasurer being unable to obtain the cash thereon, the check and securities were returned to Hall. The bank was not liquidated in the usual manner, but, by the consent of the banking department of the state, was reopened on July 1st, 1921, under the name of the Bank of Phoenix, and continued business until February 28th, 1922, when it closed its doors finally, and in due course of time Perry M.

Williams became receiver of the defunct bank. On this last-named date Hall's deposits had been reduced to the sum of $11,317.25. In August, 1921, the bank having reopened under the new name, Hall brought back to it the securities then in his possession, and took a receipt therefor, which after listing the securities, read as follows:

"Received in trust for Ernest R. Hall, the holder of the above-described notes, demands and bonds enumerated above, which the undersigned agree to hold for the benefit of Ernest R. Hall on account of secretary of state, and subject to the order of the said Ernest R. Hall, for the purpose of collecting, selling and paying the proceeds, together with the interest thereon to the said Ernest R. Hall, or his order, or holding the paper or security for which the same may be exchanged in all respects as the original, as said Ernest R. Hall may direct; and the undersigned acknowledges itself to be a bailee of said notes for said Ernest R. Hall, and the said Ernest R. Hall is the owner of said notes regardless of the party named thereon, or in any indorsements thereon, as payee, indorsee, or obligee."

"The said Bank of Phoenix hereby agrees to collect on said notes as fast as possible, and shall notify said Ernest R. Hall immediately upon the collection of said notes, bonds or demands, or the interest thereon, and shall immediately place such proceeds to the credit of Ernest R. Hall, Secretary of State. Bank of Phoenix, by D'n Stafford, President; by Ed. C. Bradford, Cashier."

The reduction of Hall's account from the amount due July 1st, 1921, to that remaining unpaid on February 28th was accomplished through the collection and the application of the proceeds of part of these securities. Apparently the reason that Hall did not withdraw the account in full, after the bank had reopened, was because of the fact that it had on deposit some three or four hundred thousand dollars in

various state funds. An attempt to withdraw all
of these state funds would have caused the imme-
diate · reclosing of the bank, and, in order to pro-
tect both the bank and the state, it was presumably
informally agreed that Hall's account, together with
the other state deposits, should not be withdrawn
except as all could be worked out without causing
the bank to be closed.

After a receiver was appointed, Hall petitioned the
superior court of Maricopa county, which had juris-
diction of the receivership proceedings, for a return
of the securities which were then in the receiver's
hands. The court denied the petition and Hall ap-
pealed from the order, but for some reason the appeal
was dismissed. Thereafter an action was commenced
by the state of Arizona against the Bank of Phoenix
and the receiver, setting up the deposit by Hall, the
arrangement in regard to the securities, and the fail-
ure of the bank, and praying judgment against the
receiver for the amount still due on the deposit and
for possession of the securities. At about the same
time, the state filed this suit against Hall and the
National Surety Company, setting up the facts in
regard to the deposit of state money by Hall, that
there was a balance of such state money of $11,317.25
remaining on hand when the bank finally closed, and
asking for judgment against Hall for the full amount
of the deposit and against the surety company for the
ten thousand dollars principal of its bond.

The suit against the bank and the receiver appar-
ently remained *in statu quo* while the present one was
pressed. Hall and the surety company answered, and
also filed a petition setting up the facts in regard to
the securities, and asked that the receiver of the
bank be made a party defendant, which petition was
granted. The receiver appeared and moved to dis-
miss as to him. The motion being denied, he then

filed a plea in abatement, setting up the suit against the bank and himself above referred to, a demurrer on the ground of misjoinder, the action on the petition of Hall in the receivership asking that the securities be turned over to him, as a plea in bar of *res adjudicata,* and an answer of a general denial.

Defendants Hall and the surety company having filed a second amended answer after the receiver had been made a party, asking for affirmative relief against the receiver, and urging that the latter should be required to account for the proceeds of the securities above mentioned, and that such proceeds should be applied on the deposit in question, the receiver again raised the same issues by proper pleadings. The demurrers, pleas in abatement and pleas in bar were overruled and the court rendered judgment in favor of the state against Hall and the surety company as prayed for in the complaint, and against the receiver in favor of Hall for $11,242.65, which was the amount of the proceeds of all the securities in question, and ordered that such sum be paid to the state and credited on the judgment against Hall and the surety company. The receiver has appealed from the judgment rendered by the trial court against him, and the matter is before us on his appeal.

There are some thirteen assignments of error, presenting questions of law only. We will not restate them, but will discuss the legal propositions raised in what seems to us to be the logical order. The first question is whether or not in this particular suit the receiver was a proper party. The ultimate purpose of all these proceedings was one and the same thing, to wit, that the state of Arizona should recover the money belonging to it which was on deposit with the Bank of Phoenix at the time it closed its doors on the 28th of February, 1922. There was, and is, no dispute that the money belonged to the state,

the only argument being as to from what source it should be repaid. It is the contention of the receiver that the state is no more than a general creditor against the bank, that the securities in question belong to the general assets, and that if the state desires any better rights than a general claim against the bank, whether the same be preferred or not, it must bring suit against Hall and his sureties; the jeopardy to the state's funds being caused by Hall's alleged illegal act in depositing them. On the other hand, Hall and the surety company, while practically admitting the state has the right to recover judgment against them as it was rendered, claim they are entitled to have the proceeds of the securities in question credited on the judgment, which, of course, would extinguish it entirely as to the surety company and almost entirely as to Hall.

Paragraphs 409 and 410, Civil Code, Revised Statutes of Arizona of 1913, read as follows:

"409. The court may, on motion of either party, order additional parties brought in upon such terms as the court may prescribe, and may prescribe the process and manner by which such additional parties shall be brought in.

"410. The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of the others or by saving their rights; but when a complete determination of the controversy cannot be had without the presence of other parties, the court shall order them to be brought in."

It is apparent to us that a complete determination of the controversy could not be had without the presence of the receiver, and in such a case he was properly made a party. *United States F. & G. Co.* v. *California-Arizona Con. Co.*, 21 Ariz. 172, 186 Pac. 502; *Skipwith* v. *Hurt*, 94 Tex. 322, 60 S. W. 423.

This, in substance, disposes of the denial of the motion to dismiss.

So far as the plea in abatement is concerned in the action pleaded as still pending, the state was seeking to secure the identical result which was sought by Hall and the surety company herein and which was ultimately granted by the judgment in this matter, and, both cases being in the same court, its action practically amounted to a consolidation of the two actions.

We next take up a more serious question, that of the plea in bar of *res adjudicata*. It is, of course, true that whenever a judgment in a prior suit, which may have involved more than one issue, is offered in bar of a second action, the burden of proof rests upon the pleader to show that the first suit was decided upon its merits, and that the same issue was decided therein which was raised in the second case. *Providence Ins. Co.* v. *Owens* (Tex. Civ. App.), 210 S. W. 558; *Horton* v. *Goodenough,* 184 Cal. 451, 194 Pac. 34; *Russell* v. *Place,* 94 U. S. 606, 24 L. Ed. 214 (see, also, Rose's U. S. Notes).

We are satisfied on examining the record that it does not appear affirmatively therefrom that the real question in issue involved in this action, so far as the receiver is concerned, to wit, the proper application of the securities in question, was determined in the proceeding pleaded as *res adjudicata*.

The preliminary legal questions of procedure involved having been thus disposed of, we come to the real merits of the case. The first question is whether or not the pledge of securities originally made by the bank to Hall was a valid one. It is first urged by appellant that the original deposit by Hall being illegal, any pledge of securities to protect such deposit was invalid as against public policy. Admitting for the sake of argument only that the deposit was made

contrary to law, yet Hall was acting all the way through as a trustee for the benefit of the state of Arizona, and the bank knew the funds deposited were public money. It is the general rule of law that where a contract, otherwise void as against public policy, is made by a trustee for an innocent third party, the other party to the contract may not set up as against a recovery by or for the beneficiary that the contract was void as against public policy. The equities in such a case are not equal, and therefore the beneficiary may recover, notwithstanding the defect in the original contract. We think the rule of law is well stated by Professor Williston in his work on Contracts:

"Section 1790. If the illegal transaction was entered into by a trustee or guardian so that any penal consequences visited upon the transaction will fall, not upon the guilty fiduciary, but upon the beneficiary, relief would be afforded either by the enforcement of the agreement because of the innocence of the beneficial plaintiff, or, if in the particular case this seemed against public policy as amounting to an allowance or ratification of the illegal transaction, the innocent beneficiary or the fiduciary in his behalf would at least be allowed to rescind and recover any consideration paid." *Winchester E. L. Co.* v. *Veal,* 145 Ind. 506, 41 N. E. 334, 44 N. E. 353; *Zimmerman* v. *Kinkle,* 108 N. Y. 282, 15 N. E. 407; *Wetmore* v. *Porter,* 92 N. Y. 76.

In the case at bar there were two innocent parties involved, the state of Arizona and the defendant surety company. We conclude that recovery is not barred in this case, even though we assume the deposit was made by Hall contrary to law.

Nor do we think there is merit in the contention that the pledge of the securities was unauthorized by the bank. A deposit, as a matter of law, is simply a loan by the customer to the bank of his money on

the promise of the bank to repay, and a bank has the corporate power to borrow money and to pledge its own securities as collateral for the loan. *Auten* v. *United States Nat. Bank,* 174 U. S. 125, 43 L. Ed. 920, 927, 19 Sup. Ct. Rep. 628 (see, also, Rose's U. S. Notes). And it is one of the ordinary powers of the president and cashier to borrow money in the regular course of business and pledge the bank's property, such as commercial paper, in payment of the debt. *Citizens' Bank* v. *Bank of Waddy's Receiver,* 126 Ky. 169, 128 Am. St. Rep. 282, 11 L. R. A. (N. S.) 598, 103 S. W. 249; 3 R. C. L. 450.

But it is urged that notwithstanding the original pledge may have been valid, yet when Hall returned the securities to the bank in August, 1921, there was no longer a pledge. It is, of course, the ordinary rule of law that, when the possession of property pledged passes from the pledgee to the pledgor, the lien is extinguished. There is an exception to this, however, that, when the pledgee delivers the property over to the pledgor for the express purpose of selling it for the benefit of the pledgee or for collecting it for his account, the lien still exists. *Clark* v. *Iselin,* 21 Wall. (U. S.) 360, 22 L. Ed. 568 (see, also, Rose's U. S. Notes). The receipt set forth above shows clearly, and the finding of the court was to that effect, that the securities were surrendered into the possession of the bank for the purpose of collection only. We therefore conclude that the lien of the pledge was not lost.

It appearing to us that the receiver was a proper party to the action, that the pleas in abatement and in bar were rightly denied and that there was a valid pledge of certain securities to protect the deposit on which the receiver had realized the sum for which judgment was given against him by the trial court,

and that the judgment both as a matter of law and of equity was correct, it should be affirmed.

We desire to say in closing, in justice to defendant Hall, there is no evidence whatever of any bad faith on his part from the beginning to the end of the entire transaction. On the contrary, it appears that in handling the funds which came into his possession he had merely followed existing custom, and that he had made every effort from the start to the close of the transaction to protect the interests of the state so far as he could. We think, however, this case and that of *Pinal County* v. *Hammons, ante,* p. 36, 243 Pac. 919, show that there is a necessity for some changes in the law regarding the handling of public funds by other officials than the treasurers of the state and counties. This, though, is a matter for the legislative department to remedy, and not for the judicial.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.