PAGE TRUST COMPANY ET AL., RECEIVERS OF BANK OF HAMLET, v. T. M. ROSE, W. K. McNEILL AND DAVID EASTERLING.

(Filed 8 December, 1926.)

1. **Banks and Banking—Depositors—Debtor and Creditor—Assignment of Assets.**

   The relation between a bank and its depositor is that of creditor and debtor, and the former may make an assignment of its notes and other assets to secure the deposit in good faith, and in the due course of its business.

2. **Same—Principal and Surety—Officers—County Deposits—Statutes.**

   Where the officers of the bank acting without personal advantage or gain sign as sureties on an obligation of the bank executed to the commissioners of a county in the manner and form required by C. S., 1389,

43—192

to secure a deposit for county road purposes, the transaction is valid when unaffected by fraud, and binding upon the receiver afterwards appointed by the court for the bank thereafter becoming insolvent.

### 3. Same—Directors—Resolutions.

Where the officers of a bank acting in good faith and without personal profit or advantage execute a bond of indemnity for the deposit of county funds, C. S., 1389, it is not required for the validity of the bond that the directors authorize the same by a resolution duly passed in order to protect the rights of the sureties, officers of the bank.

### 4. Same—Receivers—Creditors—Distribution of Funds.

The sureties on an indemnity bond given by a bank to secure a deposit of county funds required by C. S., 1389, are entitled to the collateral given them by the bank for their protection in becoming such surety, and is available to them in preference to that of a receiver of the bank, thereafter appointed by the court, claiming the proceeds for distribution among the general creditors of the bank, when the transaction has been made by the sureties in good faith and without personal advantage to them.

### 5. Same—Consideration.

The consideration moving to a bank when its officers without individual benefit become sureties on its indemnity bond given for a county deposit, under the requirements of the statute, is the deposit so obtained.

APPEAL by defendants from *Schenck, J.,* at May Term, 1926, of RICHMOND. Reversed.

Controversy without action to determine title to certain notes of the total face value of $38,128.77. On 8 September, 1925, and prior thereto, said notes were owned by the Bank of Hamlet, as part of its assets.

Plaintiffs contend that as receivers of the Bank of Hamlet, they are entitled to said notes, to be held by them as general assets for distribution among all the creditors of said bank; defendants contend that by virtue of an assignment by said bank, made on 8 September, 1925, they are entitled to said notes, to be held by them under the terms of said assignment. The validity of the assignment, denied by plaintiffs, is the only matter involved in this controversy and presented for decision.

The court was of opinion that the assignment was not valid, and thereupon adjudged that plaintiffs are entitled to said notes, free and clear of any rights, claims or equities therein of defendants. From this judgment defendants appealed to the Supreme Court.

*Bynum & Henry for plaintiffs.*
*Rose & Lyon for defendants.*

CONNOR, J. Plaintiffs were on 14 November, 1925, duly appointed receivers of the Bank of Hamlet, which is insolvent; having qualified as such receivers, they are now engaged in the performance of the duties

of their office. On said date, and for some time prior thereto—particularly on 8 September, 1925—defendants were, respectively, president, vice-president, and vice-president and cashier of said bank.

During the month of September, 1925, the board of commissioners of Richmond County proposed to deposit in the Bank of Hamlet, one of the banks located and doing business in said county, the sum of $37,500; this sum was a part of the road fund of Richmond County, then under the control of said board. Before making said deposit, however, and as a condition of making the same, the board of commissioners required the Bank of Hamlet to execute and file with said board a bond in the sum of $37,500, conditioned as follows:

"Now, if the said Bank of Hamlet, Hamlet, N. C., shall well and truly execute the duties imposed upon it, according to law, and on the warrant of the chairman of the board of county commissioners, pay all moneys which shall come into its hands, as county depository, and render a just and true account thereof to the board when required by law or by said board of county commissioners, then this obligation shall be null and void; otherwise to remain in full force and effect."

The requirement by the board of commissioners of the bond was in accordance with the provisions of chapters 503, 603 and 685, Public-Local Laws of 1915. These provisions are in effect the same as that contained in C. S., 1389, with respect to deposit of funds belonging to a county in a bank located and doing business in said county. The bank, before receiving deposits of county funds, is required to execute a bond for the safe-keeping and proper accounting of such funds as may be deposited by the board of commissioners of the county therein, under the authority of the statute.

On 8 September, 1925, the Bank of Hamlet, as principal, and defendants, as sureties, executed a bond in the form required and filed same with said board. Thereupon the board deposited in the Bank of Hamlet the sum of $37,500, which was entered upon the books of the bank to the credit of "Richmond County Road Fund, J. D. Covington, Auditor." The said sum remained on deposit in said bank until the appointment of plaintiffs as receivers, and is now included among the liabilities of said bank.

Contemporaneously with the execution of said bond, the Bank of Hamlet, by David Easterling, its vice-president and cashier, transferred and assigned the notes which are the subject-matter of this controversy, to defendants, T. M. Rose, W. K. McNeill and David Easterling, as security, "to save them harmless for having signed said bond," as sureties of the Bank of Hamlet. The notes were delivered to defendant, T. M. Rose, to be held by him as trustee for himself and his co-sureties. This transfer and assignment was made pursuant to an agree-

ment between said bank, acting by its vice-president and cashier, David Easterling, and defendants as sureties on the bond; defendants, in assuming the obligations as sureties for the bank, relied upon said agreement and assignment.

It is expresssly agreed between the parties to this controversy, as appears in the statement of agreed facts:

"7. That on 8 September, 1925, the Bank of Hamlet was a going concern and was regarded by the parties as solvent, and the entire transaction was carried out by T. M. Rose and W. K. McNeill for the use and benefit of the Bank of Hamlet, and in order that the bank might receive the benefit of the deposit of $37,500 being made by the county of Richmond.

8. That neither T. M. Rose nor W. K. McNeill had or derived any personal interest or benefit from the signing of said paper-writing, as surety for the Bank of Hamlet, except as stockholders of the bank.

9. That the said transactions, the execution and delivery of the paper-writing, as well as the delivery of the notes belonging to the Bank of Hamlet, were never approved by any formal meeting of the board of directors of the Bank of Hamlet, and no resolution has been passed by the board of directors authorizing or ratifying the delivery of the notes or the execution or delivery of the paper-writing."

Whether or not a banking corporation, organized and doing business under the laws of this State, has the power, without statutory authority, to transfer or assign any part of its assets as security for one or more of its depositors, is not presented by this appeal. The power of such corporation to so secure a creditor who loans money to the bank is well sustained by authoritative decisions of the courts; it does not seem to have been questioned. The relation between the bank and its depositor is that of debtor and creditor; we perceive no distinction on principle between one who deposits money with a bank, subject to check, and one who loans money to the bank for a definite time, as regards this question. There is no statute in this State forbidding a transfer or assignment by a bank of its property as security for one who is a depositor in the bank. Whether a sound policy forbids such transfer or assignment must be determined by the General Assembly and not by this Court.

In the instant case the Bank of Hamlet, located and doing business in Richmond County, had express authority to protect funds of said county, deposited with it by the board of commissioners, by a bond, with either personal or corporate sureties. The bank has implied power, at least, to pay a reasonable premium to a corporation duly authorized to become surety on its bond; it must be held also that it has power, when required to do so, to protect personal sureties, by

transfer or assignment, in good faith, of assets in value reasonably proportionate to the liability of such sureties, under the bond which is given to protect and thereby secure the deposits, such bond having been authorized and required by statute. The liabilities of the bank are not increased by such assignment and transfer; it has an asset in the deposit to offset its liability. Here the bank received a cash deposit of $37,500, and transferred and assigned, for the purpose of indemnifying the sureties on its bond, authorized by statute, its notes of the face value of $38,128.77. It is manifest that, as the parties to this controversy agree, the transaction was in good faith, and solely for the purpose of securing a desirable deposit for the bank. The transfer and assignment was valid, if made by the bank, acting in its corporate capacity.

The sureties upon the bond were officers of the bank; the transaction was conducted on the part of the bank by its vice-president and cashier, who was also one of the sureties, for whose protection the transfer and assignment was made. The contention that the transaction for this reason was invalid, cannot be sustained. It is agreed that defendants, although officers of the bank, had no personal interest in the transaction and received no personal benefit therefrom. Defendant, David Easterling, as vice-president and cashier, clearly had the power to receive the deposit and in good faith to act for the bank, without express authority from the board of directors, in complying with the lawful requirements of the board of commissioners. The board, as a depositor, is protected not only by the bond, and the obligation thereon of both the bank as principal, and defendants as sureties, but also by the notes transferred and assigned as security for the sureties. A creditor has an equity, which he may enforce, in securities deposited by his debtor with a surety to save the surety harmless by reason of his suretyship. To sustain the contention of plaintiffs would deprive the board of commissioners of additional protection upon which the board may have to rely for the recovery of the full amount of the deposit.

In *Richards, County Treas., v. Osceola Bank,* 79 Iowa, 707, 45 N. W., 294, it was held that the vice-president of a bank, having authority to transact its business, who has given a bond in his official capacity, with himself individually as surety, to secure a deposit of county funds, has the power to afterwards assign to the county treasurer notes belonging to the bank as additional security, though the bond alone may be ample.

In *Ward v. Johnston,* 95 Ill., 215, it was held that a bank, creating an "Investment Department" had authority to transfer to a trustee as security for the funds deposited in the department, certain of its assets in the form of notes, and other collateral. See, however, *Commercial Bank, etc., v. Citizens Trust, etc., Co.,* 153 Ky., 566, 156 S. W., 100,

Ann. Cas., 1915C., 166, where it is held that under statutes in force in Kentucky a bank had neither express nor implied authority to secure the payment of a depositor by pledging its assets, such as notes, etc., and that a pledge thereof is *ultra vires*. *Citizens Bank v. Bank of Waddy,* 126 Ky., 169, 103 S. W., 249, 128 Am. St. Rep. 282, 11 L. R. A. (N. S.), 598, N., is cited in Morse on Banks and Banking, sec. 160 as authority for the statement in the text that the cashier of a bank has inherent power to borrow money in the regular course of the business of the bank and may secure the loan by note or pledge of the bank's property. In *Cherry v. City National Bank,* 144 Fed., 587, it is held that executive officers of a national bank may, in the usual course of business and without special authority from the directors, rediscount their own discounts or otherwise borrow money for the bank's use.

The transactions out of which the subject-matter of this controversy arose, to wit, the execution and delivery of the bond, authorized by statute, and the transfer and assignment of the notes belonging to the bank, for the purpose of indemnifying the sureties of the bank, on its bond, were valid. The vice-president and cashier had the power, without special authority of the board of directors, to execute the bond, and to transfer and assign the notes, to be held solely for the purpose of saving harmless the sureties on the bond. The bank received the benefit accruing·from the transactions *(Trust Co. v. Trust Co.,* 188. N. C., 766). The transfer and assignment of the notes were entirely free from any taint of fraud, bad faith or undue advantage *(Everett v. Staton, ante,* 216); defendants, although officers and directors of the bank, had no personal interest, and received no personal benefit from the transactions *(Everett v. Staton, ante,* 221).

It would be a hard measure in view of changed conditions now to deprive defendants of the protection upon which they relied, in good faith, when, solely for the advantage of the bank, they assumed liability as its sureties. The bank, its creditors, depositors and stockholders, received all the benefits of the transaction; it is no hardship to them to hold that defendants are protected by the security which the bank agreed to give and did give to them before they signed the bond. While it is justly held that officers and directors of a bank will not be permitted to gain personal profit or to secure personal advantage by reason of their official relations to the bank, power to serve the bank, its stockholders and depositors in good faith, without personal loss or discredit, must be conceded to them.

It was error to hold that the assignment was invalid. The judgment must therefore be reversed; judgment should be entered below in accordance with this opinion.

Reversed.