[Civil No. 2432. Filed January 14, 1929.]

[273 Pac. 728.]

PERRY M. WILLIAMS, as Receiver of the Bank of Phoenix and as Successor of ANDREW BAUMERT, Jr., as Receiver of the Bank of Phoenix, Appellant, v. RAYMOND R. EARHART, State Treasurer of the State of Arizona; CHARLES W. FAIRFIELD, State Auditor of Said State; WILLIAM J. GALBRAITH, as Attorney General of Said State, and Each as Individuals; and WAYNE HUBBS, as Treasurer of the State of Arizona and Successor to Said RAYMOND R. EARHART, as Such Treasurer, and Individually, and JOHN W. MURPHY, Attorney General of the State of Arizona, and Individually, Appellees.

Mr. J. H. Moeur and Mr. J. Early Craig, for Appellants.

Mr. John W. Murphy, Attorney General, and Mr. Earl Anderson, Assistant Attorney General, for Appellees.

LOCKWOOD, C. J.—This suit was instituted by the receiver of the Central Bank of Phoenix against Raymond Earhart, state treasurer, Charles W. Fairfield, state auditor, and William J. Galbraith, Attorney General, to recover possession of certain collateral theretofore pledged and delivered to Earhart to secure a deposit of public money. The facts in the case are not in serious dispute, and may be stated as follows:

Earhart was elected state treasurer in 1920, and took office early in January, 1921. He found that certain state funds amounting to over $500,000 had been deposited by his predecessor in the Central Bank of Phoenix. The bank had given to the state a depository bond in the form provided by statute, with the Central Finance Corporation, hereinafter called the company, as surety thereon. Earhart was not satisfied with this bond and demanded further security. The company had previously required the bank, in order to guarantee it against loss on the depository bond above mentioned, to pledge to it about $250,000 of notes and other securities. Earhart demanded that these securities be turned over to him, and, after it had been done, notified the bank that it would either have to furnish another bond or it would be necessary to withdraw the deposits. The bank either could not or would not make the additional bond, and it appeared that an attempt to withdraw the state deposits would compel the bank to close its doors, so it was required by Earhart to put up additional notes and securities, which, together with those already delivered to him, amounted in face value to over $600,000. The bank, shortly thereafter, and in March, 1921, was

closed by the bank comptroller, Earhart being in possession of the securities at the time, and retaining them until after the bank reopened. The bank was not liquidated in the usual manner, but with the consent of the state banking department resumed business on July 1, 1921, under the name of the Bank of Phoenix. Before this could be done it was necessary to obtain the consent of the general depositors to take special time certificates of deposit for the amount of their then deposits in the bank. Many of these depositors knew nothing of the pledge of the collateral to Earhart above referred to, at the time they accepted the certificates of deposit. After the bank was reopened Earhart took back and turned over to the bank most of the securities above referred to, taking from the bank the following receipt:

"Received in Trust for Raymond R. Earhart, the holder of the above described notes, the notes enumerated above, which the undersigned agrees to hold for the benefit of, on account of, and subject to the order of said Raymond R. Earhart or his order, or holding the paper or securities for which the same may be exchanged in all respects as the originals, as said Raymond R. Earhart may direct; and the undersigned acknowledges itself to be a bailee of said notes for said Raymond R. Earhart and that said Raymond R. Earhart is the owner of said notes, regardless of the party named therein, or in any endorsement thereon, as payee, endorsee, or obligee. Bank of Phoenix, By D'N Stafford, President. By Ed. C. Bradford, Cashier."

A list of the notes and securities returned was attached to the receipt. After the delivery of these notes to the bank the latter made collections thereon and took renewals on some notes, the collections as made being turned over to Earhart, and the state deposits being reduced accordingly. The bank was finally closed on February 27, 1922, but shortly before that time Earhart again secured the securities re-

maining from the bank and took them to his office. A receiver was appointed, who demanded from Earhart the securities in question, and, on his refusal, brought this action to recover them. The complaint prays for a return of the securities, and a decree that the defendants have no right to or lien upon them, and that the receiver is entitled to them as a part of the general assets of the bank.

It will be seen from the foregoing statement of facts that the real parties in interest are the state of Arizona, on the one hand, and the receiver, acting for the general creditors of the insolvent bank, on the other. The judgment of the lower court was in favor of defendants, and the receiver has brought the matter before us for review.

There are some ten assignments of error, nine of which go to the general case on its merits, and the other deals with an alleged inadvertent error in the judgment which would, it is claimed, in any event require its modification. We will deal with the general assignments first, and the special afterwards. Plaintiff has summarized the questions of law arising on the former as follows: (1) Did the acquisition of the securities by Earhart in the spring of 1921 constitute a valid pledge? (2) If it did, did the return of the property to the bank in July, 1921, under the conditions above set forth, destroy the pledge? (3) Are defendants, even though the pledge is otherwise valid, estopped from claiming any lien on the property? We will consider these matters in their order.

It is plaintiff's contention that, since the statute expressly provides a method of securing the deposit of public funds in a bank, that no other security except the statutory one can be taken under any circumstances. If, therefore, a public officer does take any other security than the legally specified one, it is void. At the time the security was taken the

deposit of public moneys in banks was regulated by title 44, Revised Statutes of Arizona of 1913, Civil Code. This title in substance provided that the Governor, the treasurer, and the auditor might designate certain banks as depositories of state money upon their complying with its requirements. The banks which desired to avail themselves of the benefit of such declaration were required to make a bond with good and sufficient sureties, which bond was to be approved by the three state officers above mentioned. In lieu of the surety bond the bank might deposit with the state treasurer interest-bearing bonds of the United States, of the state of Arizona, or of any county, city, road or school district of the state. These are the only kinds of security mentioned in the statute, and it is claimed that because these, and only these two, were authorized by law, the maxim of *"expressio unius"* excludes any other kind. We agree that security of the kind specified in the statute is the only kind the taking of which would exempt the state treasurer from liability on his official bond in case he deposited state money in a designated depository bank, but it by no means necessarily follows that other security, even though it does not exempt the treasurer from liability for the deposit, cannot be used by him for the protection of the latter. It is doubtless the duty of the treasurer to do anything not expressly prohibited by law to protect the safety of public moneys, and we think that if the incoming state treasurer believed that for any reason the security previously taken in strict accordance with law was not sufficient to protect the public funds for whose safety he was responsible, it was highly commendable for him to do the best he could to insure their safety. The authorities are not unanimous on whether the giving of security by a bank to secure a deposit is legal in the absence of a statute permitting

it. The Supreme Court of Kentucky in *Commercial Bank, etc.,* v. *Citizens' Trust, etc.,* 153 Ky. 566, Ann. Cas. 1915C, 166, 45 L. R. A. (N. S.) 950, 156 S. W. 160, says:

"There being no express authority given to a bank to secure a deposit, by pledge of its assets, and it being apparent that such a practice would have a tendency, and pave the way, to the perpetration of fraud, by putting it in the power of the officers of a bank to give a preference to favored customers, it cannot successfully be maintained that a bank has the implied right or power to do so. . . . So, the only reasonable construction that can be placed upon these statutes, requiring certain public funds to be secured by the depositary, is that the security that such depositary shall give must be other than a pledge of its own assets."

On the other hand, it is held in *Richards* v. *Osceola Bank,* 79 Iowa 707, 45 N. W. 294:

"It cannot be doubted that, in the absence of any statutory prohibition, the county treasurer was authorized to demand and recover from the bank the money due the county. Surely, if he had such authority, he could accept security from the bank for its indebtedness. It would be strange, indeed, if any law existed prohibiting the county treasurer the financial officer of the county charged with the duty of collecting the debt owed by the bank, from accepting security where, in his judgment, it is demanded. It would be an absurd rule forbidding the county treasurer, in the discharge of his duty, to do an act for the protection of the county when his judgment, as a faithful officer, directed it. The statute . . . providing for security by bond to be given by a bank before deposits of county money are made therein does not forbid the county treasurer to take other security if, in his judgment, it is demanded. Other creditors of the bank cannot complain, for the notes were taken in the exercise of the undoubted right of a creditor, in the exercise of diligence, to secure his claim by taking collateral security of this character."

To the same general effect are *Ward* v. *Johnson*, 95 Ill. 215, and *Ahl* v. *Rhoads*, 84 Pa. 319.

Further, even if the giving of the additional security was illegal, the bank was as fully aware of that fact at the time it gave it as was defendant Earhart. We have held in the case of *Williams* v. *Hall*, 30 Ariz. 581, 249 Pac. 755, a case arising out of the insolvency of the same bank, that where a contract, otherwise void as against public policy, is made by a trustee for an innocent third party, the other party to the contract may not set up as against a recovery by or for the beneficiary that the contract was void as against public policy. The equities in such a case are not equal, and therefore the beneficiary may recover, notwithstanding the defect in the original contract. In this case the state of Arizona is the real beneficiary—is the innocent third party—and, following the ruling in *Williams* v. *Hall, supra,* we conclude that, assuming without deciding the taking of the pledge was contrary to law, the receiver may not repudiate the contract as against the interests of the beneficiary, the state. The alleged invalidity of the original pledge of securities, therefore, may not be raised by plaintiff in this proceeding.

The second contention of plaintiff, that the return of the securities to the bank voided the original pledge, even if the latter were valid, is denied by us in *Williams* v. *Hall, supra.* The same claim was made in regard to securities pledged and returned in exactly the same manner as those in this case, and we held that the lien of the pledge was not lost.

Nor do we think defendants are estopped from asserting a priority over the general creditors for the reason that they participated in an attempt to create a secret lien, and failed to disclose to the creditors when the bank opened the existence of such lien. The original pledge was made before the bank first closed

its doors. The securities were held by the treasurer during all the time the reorganization of the bank was being discussed, and there is no rule against a failing debtor preferring one creditor over another, except where such preference is declared void by a bankruptcy statute or other of similar nature. *Rice* v. *Adler-Goldman Commission Co.*, (C. C. A.) 71 Fed. 151; *Robinson* v. *Hawley*, 45 App. Div. 287, 61 N. Y. Supp. 138; *Stuart* v. *Farmers' Bank*, 137 Wis. 66, 16 Ann. Cas. 821; 117 N. W. 820.

The lien was created more than four months before the bank closed the first time, and nearly a year before it closed the second time, so that it did not come within the statutory provisions against liens created less than four months preceding the closing of a bank. Paragraph 294, Revised Statutes of Arizona of 1913, Civil Code. Further, the receiver, so far as previous contracts of the bank are concerned, stands in the shoes of the latter and can assert no claim that could not be made by it. *Hildreth* v. *Stockgrowers' Finance Corp.*, ante, p. 278, 271 Pac. 25; *Gottlieb* v. *Miller*, 154 Ill. 44, 39 N. E. 992; *Kane* v. *Lodor*, 56 N. J. Eq. 268, 38 Atl. 966. We are of the opinion that, as between the receiver and defendants, the original pledge was a valid one; that it was not destroyed by the return of the securities to the bank, in the manner above shown; and that defendants were not estopped from asserting their lien.

The last assignment of error which we have to consider is as follows:

"It was, and is, error to include in the findings or in the judgment any notes or securities or property other than those described in the amended and supplemental complaint, and the judgment and findings as to any such other items, and each of them, is unsupported by the evidence, since it clearly appears from the evidence that the list so appearing in the amended and supplemental complaint constituted the true list of securities as finally constituted after sub-

stitutions, changes and payments, and the judgment if affirmed should be modified accordingly.''

Appellees have not seen fit to reply to this assignment of error, so we might well take it as confessed. We have, however, examined the record, and find the following situation: Plaintiff in his complaint set up a list of certain securities which he claimed were those assigned and which alone he asked to be restored to his possession, together with any renewals thereof. Defendants in their answer referred to plaintiff's list as being the securities assigned to them, and of which they claim possession under the pledge. Nowhere in the pleadings is there any suggestion that Plaintiff's Exhibit ''A,'' attached to the amended and supplemental complaint, does not correctly represent the assigned securities. On checking this over with the judgment we find the latter includes some 29 items amounting to many thousands of dollars, which are in no manner mentioned in Plaintiff's Exhibit ''A,'' nor has it been suggested to us by defendants how and why they were included in the judgment. On the face of the record the judgment is therefore incorrect so far as the inclusion of any securities not set forth in Plaintiff's Exhibit ''A'' are concerned, and should be modified by omitting such items. It does not appear from the record, however, that this discrepancy was called to the attention of the trial court, either by motion to amend the judgment, or on the motion for new trial.

The case is remanded to the superior court of Maricopa county, with instructions to amend the judgment so as to include therein only those securities set forth in Plaintiff's Exhibit ''A'' attached to the supplemental complaint, and, as so modified, it is affirmed. Since plaintiff failed to have the error called to the attention of the trial court for its correction, defendants will recover their costs.

McALISTER and ROSS, JJ., concur.