**SNEEDEN v. CITY OF MARION, Ill., et al.**

No. 4494.

District Court, E. D. Illinois.
March 21, 1932.

Ferrell & Hay, of Marion, Ill., for plaintiff.

Pope & Driemeyer, of East St. Louis, Ill., for defendants.

WHAM, District Judge.

By his bill the plaintiff, receiver of the City National Bank of Herrin, seeks to have the delivery and pledge of certain bonds by said bank to secure a deposit prior to the appointment of the receiver, of funds of the city of Marion, Ill., by Ray C. Carroll, as city treasurer, held an illegal and ultra vires act on the part of said bank and its officers; to have the defendants enjoined from disposing of said bonds and to have the same returned to the plaintiff. Plaintiff alleges that the pledge of assets of the bank to secure a deposit was not only beyond the power of the bank, but was against public policy and constituted a fraud upon the bank's other creditors and depositors, and, further, that the making of this pledge by the officers was not authorized by the board of directors. The defendants by their joint answer deny that the plaintiff is entitled to the return of said bonds and deny that the pledge of said bonds was ultra vires, illegal, and void; deny that such act was against public policy and a fraud on the other creditors and depositors of the bank, and say that the funds so deposited were public moneys for the securing of which the said bank had a lawful right to pledge a portion of its assets, and that the officers so doing were authorized by the board of directors so to do, and their acts were subsequently approved and acquiesced in by the board. Upon application of the plaintiff, a temporary restraining order was issued restraining disposition of said bonds, and by agreement of the parties the entire matter was submitted to the court upon stipulation of facts for a determination of the merits of the case without a separate hearing upon plaintiff's application for preliminary injunction.

No evidence was taken in the case, but all the facts were stipulated in writing, from which written stipulation the following findings of fact are made:

1. The plaintiff became the duly qualified and acting receiver of the City National Bank of Herrin, a national bank located in the city of Herrin, Williamson county, Ill., on October 2, 1931; that the city of Marion, Williamson county, Ill., is a municipal corporation; that the Continental Illinois Bank & Trust Company is a banking association organized and existing under the laws of the state of Illinois and is located in the city of Chicago, and the Fidelity & Casualty Company of New York is a corporation duly licensed to do business in the state of Illinois.

2. The plaintiff, Ben Sneeden, as receiver of the City National Bank of Herrin, is engaged in winding up the affairs of said bank; that said bank failed to open for business on October 21, 1931, and has since remained closed and suspended; that prior to the suspension of said bank it owned and held certain bonds described in paragraph 3 of the bill of complaint of a total par value of $21,000.

3. On August 25, 1931, one Ray C. Carroll, the city treasurer of the city of Marion, Ill., deposited in said City National Bank of Herrin funds of said city of Marion in his name as city treasurer, and on October 21, 1931, the date of the closing of said bank, said Ray C. Carroll as city treasurer of the city of Marion, Ill., had funds of said city on deposit in said bank in the sum of $16,430. The city of Marion, Ill., before and during all the times aforesaid, had adopted and its affairs were being administered under the "Commission Form of Government" as provided by the statutory laws of the state of Illinois.

4. Ray C. Carroll, to qualify under the law as treasurer of the city of Marion, was required to give a bond with good and sufficient surety conditioned for the faithful performance of the duties of the office and the payment of all moneys received by him according to the law and ordinances of said city; that he applied to the Fidelity & Casualty Company of New York to execute said bond as surety and that company agreed to do so provided Carroll would procure a bank which would secure the deposit of the public money of the city of Marion by pledge of some of its assets satisfactory to said surety company; that there was then no bank in the city of Marion; that said Carroll, as treasurer, with William Below, finance commissioner of the city of Marion, and an agent of the Fidelity & Casualty Company of New York, made and entered into an agreement

with Joe P. Benson, cashier of the City National Bank of Herrin, that if said Carroll would deposit in said bank the public money of the city of Marion coming into his hands as treasurer, said bank would deposit with the Continental Illinois Bank & Trust Company the bonds described in paragraph 3 of the bill of complaint to be held by said Continental Illinois Bank & Trust Company for the purpose of securing the safe-keeping and prompt payment of the public money of the city of Marion deposited with said bank; that thereafter the said agreement was executed on behalf of the City National Bank of Herrin by R. A. Karr, vice president of said bank, the president being out of the city by reason of illness, and Joe B. Benson as cashier, and was transmitted by Mr. Benson to the Continental Illinois Bank & Trust Company with the bonds and securities described in paragraph 3 of the bill, and the agreement and bonds were received and the trust was accepted by said Continental Illinois Bank & Trust Company; that thereafter the Fidelity & Casualty Company of New York, by reason of and on the strength of the deposit of the city's funds being thus secured, executed the official bond of said Carroll as city treasurer; pursuant to said agreement Ray C. Carroll as treasurer deposited the public moneys of the city of Marion in the City National Bank of Herrin.

5. The bonds described in paragraph 3 of the bill of complaint are now in the custody of the Continental Illinois Bank & Trust Company which holds them subject to the terms and provisions of the said depositary agreement.

6. Mr. Benson, as cashier of the City National Bank of Herrin, with said Below, finance commissioner, agreed that the bank would pay the city of Marion interest on its public moneys on deposit at the rate of 2 per cent. per annum, payable monthly on average balances in excess of $5,000. The City National Bank of Herrin did not execute and deliver to the city of Marion any bond to secure the said deposit in any form whatsoever. The said deposit was on checking account, and the city treasurer drew checks against the deposit from time to time in the ordinary course of business which were accepted and paid by the bank.

7. Mr. Benson informed the directors of the City National Bank of Herrin of the arrangement with Mr. Carroll as treasurer of the city of Marion and that the said securities belonging to the bank had been pledged as security for the deposit of the public money of the city of Marion. The matter was discussed at a meeting of the board of directors, and while no formal action was taken by the board of directors, the action taken was acquiesced in by the various directors individually.

8. On June 13, 1930, the board of directors of the City National Bank of Herrin at a regular monthly meeting of the board adopted a resolution empowering the president and the cashier of the bank "to set aside with any third party as trustee any of the unpledged assets of the bank as security for a deposit in said bank of any funds so deposited by any school treasurer, city treasurer, township treasurer, state treasurer, postmaster depositing postal savings funds, or any receiver for any closed bank or other public institution in conformity to law, to secure such deposit which belongs to any of the municipalities or institutions represented by said depositor, said assets so pledged to be held by the designated trustee as security for the repayment of the said deposit to the order of the said depositor but not as a guarantee of the lawful acts of said depositor in his official capacity. And that any previous action of the president and cashier of the bank in conformity of the above be hereby ratified and confirmed."

9. The City National Bank of Herrin published a statement of its condition the latter part of September, 1931, being the only statement of condition published subsequent to July 31, 1931, and therein made no reference to the fact that the bonds and securities described in paragraph 3 of the bill of complaint had been pledged to secure the deposit of the public money of the city of Marion or that other securities of the bank had been pledged to secure other deposits. In the form of statement of its condition required and published by the bank, no provision was made for a statement as to the existence of such pledges.

10. No facts appear indicating bad faith, actual fraud, or contemplation of the bank's insolvency at the time the pledge was made on August 28, 1931, on the part of the officers of the bank or of any other party to the transaction, and I find there was none.

### Conclusions of Law.

1. The City National Bank of Herrin had lawful power under the law of Illinois and of the United States at and during the time here in question to pledge its assets consisting of the bonds described in paragraph 3 of the

bill of complaint to secure the general deposit of the public funds of the city of Marion, and the transaction by which it did so was lawful and not ultra vires and void and was not fraudulent as to other creditors and depositors in the bank.

2. The agreement entered into between said bank by and through its vice president and cashier and Ray C. Carroll, as treasurer of the city of Marion, whereby the bank agreed to deposit with the Continental Illinois Bank & Trust Company the bonds described in paragraph 3 of the bill of complaint as security for the public funds of the city of Marion deposited in the City National Bank of Herrin, was a lawful agreement, and the agreement in writing dated August 28, 1931, executed by said officers of the bank, and the acceptance, in writing, of the trust with the bonds deposited therewith, was a lawful agreement and transaction.

3. The transaction was authorized and with full knowledge thereof acquiesced in by the board of directors of said bank and became and was the binding act of the bank.

4. The receiver of the City National Bank of Herrin is not entitled to recover the bonds so pledged without payment of the deposit in full which the bonds were pledged to secure, and is not entitled to an injunction restraining the enforcement and execution of the terms of the agreement entered into on the 28th day of August, 1931, under which the said bonds were pledged with the Continental Illinois Bank & Trust Company of Chicago, Ill., as security for said deposit.

5. The plaintiff's bill should be dismissed for want of equity at the cost of the plaintiff and the temporary restraining order entered herein should be dissolved.

### Opinion.

Was the agreement entered into by the City National Bank of Herrin by which it agreed to pledge a portion of its assets to secure the public moneys of the city of Marion, and the pledge of said assets pursuant to said agreement, under the circumstances there existing, beyond its powers and void?

By section 90, title 12, U. S. C., 12 USCA § 90 (R. S. § 5153, derived from Act of June 3, 1864, § 45, 13 Stat. 113), national banks, when designated by the Secretary of the Treasury, are made depositaries of public money and financial agents of the United States government and are required to give satisfactory security for the faithful performance of such duties by deposit of United States bonds and otherwise. To this

section was added by way of amendment on June 25, 1930 (12 USCA § 90), the following paragraph: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

The statutes of the state of Illinois controlling cities under the so-called "Commission Form of Government," as was the city of Marion at the time of the deposit and agreement here in question, provided that the city treasurer should deposit the money received by him as treasurer in a bank in the city to be selected by the president of the council, the commissioner of accounts and finance, and the treasurer or any two of them, and that before such deposits were made in the bank so chosen, the bank should be required to enter into an obligation to pay interest on monthly balances and to execute a good and sufficient bond with sureties to be approved by the president of the council conditioned that such bank safely keep and account for and pay over said money. Chapter 24, § 316, Smith-Hurd Revised Statutes of Illinois, 1931, page 404.

There was no bank in the city of Marion on August 28, 1931, when the deposit and agreement here in question were made, and it was impossible for the city treasurer of that city to comply with the statute requiring him to deposit city funds in a designated depositary in the city. The only statute directing the disposition of the public money in his hands being inapplicable, the city treasurer was under the responsibility of finding for himself a depositary for the city funds with the safest security possible. He had to keep the money available for use as the city needed it and was under personal obligation to keep it safely and account for it. He was required to give a bond guaranteeing that he would do so. Under the circumstances it would seem that he was acting within the law when he deposited the money in the City National Bank of Herrin and required a pledge of a sufficient portion of the bank's assets to assure the return of the deposit, if the bank was authorized to give such security. The amendment to section 90, title 12, U. S. C. (12 USCA § 90), specifically authorized the City National Bank of Herrin to accept public funds of the city of Marion as deposits and pledge

assets to secure such deposits if the law in Illinois authorized banks within the state to give such security under similar circumstances.

No statute of the state of Illinois expressly authorizes or prohibits the giving of such security to secure public funds. Whether the law of Illinois authorizes banks within the state to give such security must be determined from its banking act, the decisions of its courts, and its legislative policy as shown by its statutes touching or related to the subject.

The Banking Act of Illinois provides that: "It shall be lawful to form banks and banking associations, as hereinafter provided, for the purpose of discount and deposit, buying and selling exchange and doing a general banking business, excepting the issuing of bills to circulate as money; and such banks or banking associations shall have the power to loan money on personal and real estate security, and to accept and execute trusts." Section 1, chap. 16½, Smith-Hurd Illinois Rev. Stat. 1931. The act does not further define, express, or limit the power of a bank with reference to giving security for deposits of public funds.

The Illinois Legislature has recognized the power of banks doing business under the laws of Illinois to secure the deposit of public funds by pledge of assets. As illustrative of such legislative recognition, section 29 of chapter 130 of Smith-Hurd Rev. Stat. 1931, authorizes the deposit of securities by banks designated as depositaries to protect state moneys. It is reasonable to conclude that if banks have the power, under the Banking Act of Illinois which is thus recognized by the Legislature, the power also extends to the giving of similar security for any public funds of the state or political subdivision of the state.

The legislative policy thus expressed negatives the thought that the pledge by a bank of its assets to secure public deposits is contrary to the public policy of the state of Illinois or should be looked upon as a fraud upon the other depositors. In the same way the 1930 amendment to section 90, title 12, U. S. C. (12 USCA § 90), negatives the thought that the pledge of assets to secure deposits of public funds of a State or political subdivision thereof is contrary to public policy relating to national banks or operates as a fraud upon general depositors.

While there is no published decision in the state of Illinois which deals directly with the power of banks to pledge their assets to secure deposits of public funds, a decision of the Supreme Court in the case of Ward v. Johnson, 95 Ill. 215, is generally recognized by the courts as laying down the broad rule that banks have the power to pledge their assets to secure deposits of any character whatsoever. Its citation in the following cases may be noted: Williams v. Earhart, 34 Ariz. 565, 273 P. 728 (1929); First Amer. Bank & Trust Co. et al. v. Town of Palm Beach, 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398 (1928); U. S. Fidelity & Guar. Co. v. Village of Bassfield, 148 Miss. 109, 114 So. 20 (1927); Page Trust Co. v. Rose, 192 N. C. 673, 135 S. E. 795 (1926); Cameron v. Christy, 286 Pa. 405, 133 A. 551 (1926); Grigsby v. People's Bank, 158 Tenn. 182, 11 S.W.(2d) 673 (1928); Pixton v. Perry, 72 Utah, 129, 269 P. 144 (1928); Schumacher v. Eastern Bank & Trust Co., 52 F.(2d) 925 (4 C. C. A., 1931).

Though a careful reading of the facts dealt with in Ward v. Johnson, supra, may bring one to the conclusion that the pledge of assets there held valid was given to secure loans and deposits in the nature of loans, the broader principle therein expressed has never been questioned in Illinois by any decision or by any legislative enactment. Unquestionably, the weight of authorities in other jurisdictions, as will be hereinafter shown, supports the rule that banks, in the absence of specific statutory limitation, have the power to secure the deposit of public funds by a pledge of assets of the bank.

A careful appraisal of the foregoing considerations, in my judgment, warrants the conclusion that banks in Illinois are authorized by its laws to accept a deposit of public funds and pledge assets as security, and, under the circumstances disclosed in this case, any bank in the state would have been authorized by the laws of Illinois to accept the funds of the city of Marion and secure the same by such pledge. It follows that the City National Bank of Herrin had specific authority under section 90, title 12, U. S. C., as amended (12 USCA § 90), to accept the deposit of the public funds of the city of Marion and pledge the bonds here in question as security.

It would further appear from a study of the National Banking Act, the statutes of the United States relating to security required of national banks for deposits of moneys of the United States, and the trend of the decisions relating to the powers of banks, that

national banks have always had the power to give security for deposits of public funds by a pledge of assets.

The powers of a national bank are conferred by Rev. Stat. § 5136 (title 12, U. S. Code, § 24 [12 USCA § 24]), which provides that such a bank shall have power to adopt and use a corporate seal, to have succession for ninety-nine years, to make contracts, to sue and be sued, to elect or appoint directors and officers, to prescribe by-laws, and: ."Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this chapter."

While not expressly given by the statute, the power of national banks to pledge their assets to secure loans has been universally recognized. This rule has been oftentimes held to include deposits in the nature of loans, the courts having regard to the substance of the transaction rather than its form. But that there are fundamental differences in the character of the indebtedness created by a loan and that created by a general deposit has been noted. Such differences are well stated by the court in Schumacher v. Eastern Bank & Trust Co., 52 F.(2d) 925 (C. C. A. 4). These recognized differences between loans and general deposits have resulted in a conflict in the authorities with reference to the power of a bank to pledge its assets to secure general deposits. While we are not here directly concerned with the power of banks to secure private deposits, a distinction has generally been drawn, in considering this problem, between the power of banks to secure a private deposit and the power to secure a deposit of public funds by a pledge of assets.

The power of banks to pledge assets to secure deposits of public funds has often been recognized by legislative bodies which have apparently assumed that banks have such power and have made use of it for the protection and safe-keeping of public funds.

That the Congress of the United States early recognized that national banks had the power to pledge their assets to secure deposits of funds belonging to the United States is illustrated by section 90, title 12, U. S. C. (12 USCA § 90), requiring national banks, when designated by the Secretary of the Treasury as depositaries of public money, to give security therefor by deposit or pledge of their assets. By this section the Congress did not confer power to pledge assets for security of deposits of public money of the United States, but thereby recognized and utilized that power in the bank under the act by which it was created. (1915) 30 Op. Attys. Gen. 341. Other statutes of the United States have similarly recognized and utilized the power of national banks to pledge their assets as security for the public funds of the United States. Sections 192, 332, and 701, title 12, U. S. C. (12 USCA §§ 192, 332, 701), and section 759, title 39, U. S. C. (39 USCA § 759).

Since the Congress has recognized the power of national banks to pledge their assets as security for funds of the United States without such power being expressly given, it would seem to be a reasonable deduction that national banks likewise have the power to secure deposits of other public funds by a pledge of their assets.

The greater weight of the court decisions in the various states supports the general principle that banks have power to secure public funds by a pledge of their assets as incidental to the banking business without express statutory authority therefor. Williams v. Hall, 30 Ariz. 581, 249 P. 755 (1926); Williams v. Earhart, 34 Ariz. 565, 273 P. 728 (1929); McFerson v. Nat. Surety Co., 72 Colo. 482, 212 P. 489 (1923); First Amer. Bank & Trust Co. et al. v. Town of Palm Beach, 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398 (1928); Andrew v. Odebolt Sav. Bank, 203 Iowa, 1335, 214 N. W. 559 (1927); Richards v. Osceola Bank, 79 Iowa, 707, 45 N. W. 294 (1890); U. S. Fidelity & Guar. Co. v. Village of Bassfield, 148 Miss. 109, 114 So. 26 (1927); French v. School Dist., 223 Mo. App. 53, 7 S.W.(2d) 415 (1928); Consolidated School Dist. v. Citizens' Sav. Bank, 223 Mo. 940, 21 S.W.(2d) 781 (1929); Ainsworth v. Kruger, 80 Mont. 468, 260 P. 1055 (1927); Bliss v. Mason, 121 Neb. 484, 237 N. W. 581 (1931); Melaven v. Hunker, 299 P. 1075 (N. M. 1931); Application of Broderick, 140 Misc. Rep. 861, 252 N. Y. S. 68 (1931); Page Trust Co. v. Rose, 192 N. C. 673, 135 S. E. 795 (1926); Richmond County v. Page Trust Co., 195 N. C. 545, 142 S. E. 786 (1928); Cameron v. Christy, 286 Pa. 405, 133 A. 551, 558 (1926); Grigsby

v. People's Bank, 158 Tenn. 182, 11 S.W. (2d) 673 (1928); Pixton v. Perry, 72 Utah, 129, 269 P. 144 (1928).

While the decisions cited are by state courts and deal with the powers of banks other than national banks, they deal with fundamental principles of banking and in the absence of controlling federal decisions are entitled to great weight in arriving at a correct interpretation of the National Banking Act and the powers thereby conferred. That the trend of the decisions is in favor of the interpretation giving power to banks to pledge their assets as security for deposits of public funds has been recognized by recent decisions of the federal courts. Burrowes v. Nimocks, County Treasurer, 35 F. (2d) 152 (C. C. A. 4); Schumacher v. Eastern Bank & Trust Co., 52 F.(2d) 925 (C. C. A. 4); see, also, Smith v. Baltimore & Ohio Railroad Co., 48 F.(2d) 861 (D. C. Pa.).

The leading cases which announce the minority rule to the effect that banks may not pledge assets to secure public deposits are Commercial Banking & Trust Co. v. Citizens' Trust & Guaranty Co., 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166; Divide County v. Baird, Receiver, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296; Farmers' & Merchants' State Bank v. Consolidated School District, 174 Minn. 286, 219 N. W. 163, 65 A. L. R. 1407. Following each of the three cases last cited as found in Annotated Cases and the American Law Reports are annotations reviewing the cases. In the note prefacing the most recent annotation found in 65 A. L. R. page 1412, the state of the authorities is expressed as follows: "There is a conflict of authority on the question of the power of a bank to pledge its assets to secure general depositors. The weight of authority, however, supports the doctrine that a bank may make such a pledge as security for a deposit of public funds."

The 1930 amendment to section 90, title 12, U. S. C. (12 USCA § 90), seems to be the first and only act of Congress which expressly deals with the powers of national banks to give security for deposits. It does not necessarily follow, however, that it constitutes an implied declaration by Congress that national banks theretofore were without any power whatsoever to give security for deposits. It does not take away or limit the power which banks already had to give security for deposits. Such power as the national banks had before the adoption of the amendment to give security for public funds they had after its adoption, even though that power exceeded or otherwise differed from the authority given by a particular state to its banks.

A consideration of the problem has convinced me that national banks had the power before the adoption of the amendment, and still have the power, to pledge assets to secure deposits of public funds and that the City National Bank of Herrin had the power to pledge its assets to secure the deposit of the public funds of the city of Marion regardless of the law of the state of Illinois and the said amendment of the federal law.

The foregoing conclusions dispose of the case and make it unnecessary to consider other defenses raised in the defendants' answer.

The plaintiff's bill must be dismissed for want of equity and the temporary restraining order dissolved. Decree in accordance herewith to be prepared and submitted by counsel for the defendants.