## PIXTON, STATE BANK COMMISSIONER v. PERRY, COUNTY TREASURER.

No. 4672.  Decided June 29, 1928  (269 P. 144.)

*William E. Davis,* of Brigham City, for appellant.

*LeRoy B. Young* and *J. W. Horsley,* both of Brigham City, for respondent.

STRAUP, J.

Seth Pixton, as state bank commissioner, brought this action against Heber W. Perry, personally and as county treasurer of Box Elder county, to recover from him certain bonds and stock certificates alleged to be assets of the Bank of Garland and to have been delivered to him by the bank without authority. The case was tried to the court, who made findings in favor of the defendant and rendered

judgment accordingly, from which the commissioner appeals.

The appeal is on the judgment roll. The complaint made is that on the findings as made the commissioner was entitled to a judgment requiring the defendant to deliver up the securities. The court found that in 1919 the cashier of the bank, pursuant to authority of its board of directors, transferred and delivered to John W. Ward, the then treasurer of the county, the bonds and certificates, assets of the bank, and of the value of about $11,550, to be held by him as collateral security for public funds deposited and to be deposited in the future by the county treasurer with the bank, which securities for such purpose were so held by each succeeding county treasurer, including the defendant, who was the treasurer at the commencement of the action; that in January, 1927, because of impairment of the capital of the bank and of its financial condition, the commissioner, pursuant to the laws of this state, suspended the operation of the bank and took over the control and management of its affairs; that at that time and at the commencement of action there was on deposit with the bank public funds of the county amounting to $12,889.71 theretofore deposited with it by the treasurer of the county and which were secured by the bonds and certificates in the hands of and held by the treasurer.

It is the contention of the commissioner that, in the absence of a statute expressly authorizing it, a bank has no authority or power to pledge its assets, or any part thereof, as collateral security for deposits received by it from its customers, whether from private persons or private or public corporations, and regardless of whether the deposits are private or public funds, and that there is no statute of this state giving a bank power or authority to so pledge its assets. To support the contention of the commissioner he cites and relies chiefly on the cases of *Divide County* v. *Baird*, 55 N. D. 45, 212 N. W. 236, 51 A. L. R.

296, and *Commercial Bank & T. Co.* v. *Citizens' Tr. & G. Co.*, 153 Ky. 566, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166. Such cases, in the main, support the commissioner's contention. They proceed on the theory that a deposit is not a loan; that there is a material legal difference between a loan and a deposit; that while as an incident to the business, or within its implied powers, a bank may borrow money and give its assets, or a part thereof, as collateral security for its payment, yet it may not so secure deposits by pledging its assets unless expressly authorized by statute; that public policy will not tolerate a practice which may sooner or later, in the event of financial trouble with the bank, enable it to pay and protect a favored few at the expense of an equally deserving many; that it is a fraud and an ultra vires act on the part of a bank to procure or receive deposits and pledge its assets in payment of some of them and not of others whether the deposit consists of funds of a private person or corporation or of a municipal or other public corporation or body; and as its act is ultra vires, no agreement, consent, or conduct on the part of the bank or of its officers can ratify or validate it or estop the bank or its assignee or representative from making the claim of invalidity.

On the other hand, it is the contention of the respondent that, unless a statute forbids it, a bank is authorized and has power to pledge its assets to secure deposits as well as money borrowed; that a deposit in legal effect is but a loan, the relation of that of debtor and creditor, and that the one as much as the other is a necessary incident to banking business and within the implied powers of a bank; that though the bank was not authorized to give the collateral security, yet it could not, whether solvent or insolvent, demand and recover back the securities, pledged as they were when the bank was solvent, without returning the funds or deposits received by it; that the commissioner, standing in its shoes and winding up and administering its affairs, has no greater right or power in the premises than had the bank in such

respect, nor may he claim or do more than the bank itself could have done; and that in all events the treasurer had the right to offset against the securities the amount of the unreturned deposits which exceeded either the par or actual value of the securities. In support thereof the respondent cites and relies on *Ward* v. *Johnson,* 95 Ill. 215; *Richards* v. *Osceola Bank,* 79 Iowa 707, 45 N. W. 294; *Citizens' State Bank,* v. *First National Bank,* 98 Kan. 109, 157 P. 392, L. R. A. 1917A, 696; *Maryland Casualty Co.* v. *Board,* 128 Okl. 58, 260 P. 1112; *FcFerson* v. *National Surety Co.,* 72 Colo. 482, 212 P. 489; *Williams* v. *Hall* (Ariz.) 249 P. 755; *Andrew* v. *Odebelt Savings Bank,* 203 Iowa, 1335, 214 N. W. 559; *Interstate National Bank* v. *Ferguson,* 48 Kan. 732, 30 P. 237; *State* v. *First Nat. Bank* (C. C.) 88 F. 947; *Ahl* v. *Rhods,* 84 Pa. 319; *Page Trust Co.* v. *Rose,* 192 N. C. 673, 135 S. E. 795; *Salt Lake County* v. *American Surety Co.,* 63 Utah 98, 222 P. 600; *National Surety Co.* v. *Jenkins, Receiver* (C. C. A.) 5 F. (2d) 34; 7 C. J. 538, 592. Each of the cases on one or more grounds stated by respondent supports his contention. Undoubtedly most of the cases cited and relied on by appellant are in discord with those cited and relied on by respondent. Because of further views to be noted we find it unnecessary to determine which line of cases in our opinion states the better rule or which is better grounded on legal principles.

Both parties in effect assert that the situation, at least to a great extent, is controlled by our statute. The statute referred to as bearing on the question is Comp. Laws Utah 1917, §§ 1006, 4500, in force when the deposits were made and the collateral securities transferred and delivered by the bank to the treasurer in 1919.

Section 1006 was adopted in 1911. It is:

" * * * No bank or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security; provided, that commercial banks may borrow money for temporary purposes and may pledge assets of the bank not exceeding

50 per cent in excess of the amount borrowed as collateral security therefor; except that such bank or bank officer may qualify as depositary for United States deposits or postal savings funds by the deposit of the securities required by law and not otherwise; provided further, that whenever it shall appear that a bank is borrowing habitually for the purpose of reloaning, the bank commissioner may require such bank to pay off such borrowed money. * * *"

### Section 4500 was adopted in 1913. It is:

"Title 88. *Public Funds. Collection of Interest Required on Deposits of Public Funds.* Any public officer having public funds in his custody may deposit the same, or any part thereof, with any bank incorporated under the national banking act and doing business in this state, or with any bank or trust company incorporated under the laws of and engaged in business in this state; provided, that he requires such depository to pay interest on all funds so deposited at a rate of not less than 2 per cent per annum, and that he take from such depository collateral security or a good and sufficient surety company bond or a personal bond approved by him and sufficient in amount to fully protect such funds; provided, that the cost of any official bonds required to be furnished by any public treasurer shall be paid out of funds in the respective treasuries; provided, that the interest received under the provisions of this title by the state treasurer shall be placed in the general fund."

The parties differ widely as to the construction and meaning of these sections. It is the contention of the appellant that section 1006, being a part of a general statute relating to banks and banking, forbids a bank, solvent or insolvent, to secure any deposit, no matter what the character of the deposit may be, by pledging its assets as security therefor. On the other hand, it is the contention of the respondent that a bank, while solvent, may pledge its assets to secure a deposit and is not by such section forbidden from so doing; that the word "preference," as used in the statute, refers to securing a depositor by assets of the bank to the exclusion of other depositors when the bank is or is about to become insolvent or is in financial straits, and that a solvent bank securing a deposit by pledging its assets is not creating or

causing a preference within the meaning of the statute. As to section 4500 the appellant contends that, considering it in connection with section 1006, as he contends must be done, the phrase or clause that a public officer depositing public funds in a bank shall "take from such depository collateral security" means collateral security other than assets of the bank, and giving the phrase such meaning the two sections are rendered harmonious, but giving the phrase a meaning that the bank may give collateral security by pledging its own assets renders section 4500 in such respect in discord with section 1006. On the other hand, the respondent contends that the words "collaternal security" are broad enough to include the pledging of assets of the bank, and, if such legislative intent is in conflict with section 1006, then the latter section must give way to the former, for section 4500 is a subsequent and special statute while section 1006 is a part of a general statute.

We think the consideration and construction of section 4500 is the determining factor of the controversy. The matter is not free from doubt. Much may he said in support of the respective contentions. As already observed, section 1006 is a part of a general statute relating to banks and banking. By the Penal Code a public officer is forbidden to make a profit out of public money. His authority to lend it or to deposit it with a bank is restricted. Comp. Laws Utah 1917, § 8235 et seq. Section 4500 is an independent and separate statute passed subsequently to any of the other statutes referred to and at a different and subsequent session of the Legislature, relates exclusively to "public funds" and to a subject and purpose different from that to which section 1006 or any part of the general statute on banks and banking relates, makes no reference whatever to section 1006 or to any prior statute, and contains no repealing clause of anything. It stands in the statute like a tree in a forest without similitude, or vine, or other growth attached to or associated with it. Section 1006 and section 4500 thus in no sense may be regarded as in pari materia. Section

4500 is the whole of that statute. Its undoubted purpose is to permit a public officer to deposit public funds with a bank or trust company. As a condition thereof the statute requires the depository to pay interest at a rate not less than 2 per cent per annum. Such interest goes not to the public officer—he by the Constitution and by statute is forbidden to make any profit out of public moneys—but is "to be placed in the general fund," the "public funds" in the custody of the officer and deposited by him. As a further condition the officer is required to take from such depository, bank, or trust company "collateral security or a good and sufficient surety company bond or a personal bond" to be approved by such officer, "and sufficient in amount to fully protect such funds." The purpose of requiring collateral security or a bond thus primarily is to protect the public funds and not the officer. Public funds in the custody of a public officer are not his funds, not his property. They are the funds of the state, county, or other public or municipal body of which he is an officer. Here the funds were funds and property of the county, not of the treasurer. There ought not to be any doubt as to that. It readily is perceived that a public officer may at times have in his custody public funds in excess of the amount of his official bond and in some instances greatly in excess thereof. For such reason the Legislature may well have thought that, when public funds by a public officer are deposited with a bank or trust company, the amount of the official bond of the public officer may not be sufficient to protect public funds so deposited by him and put in the custody of another. So, to protect such funds in case of their deposit with a bank or trust company, collateral security or a bond is exacted from the depository, and, in order that a bank or trust company may obtain a deposit of public funds, it, as a condition precedent, is required to give collateral security or a surety or personal bond to protect the funds. The bank thus by the statute is expressly authorized to give collateral security for a deposit of public funds. There can be no

doubt as to that. The question, however still is, What kind of collateral security is the bank authorized to give? May it give collateral security by pledging its own assets as the respondent contends it may do, or must it give property or a chose in or right of action or a separate obligation of another as is contended by the appellant? The conclusion of appellant is deduced, not from the language of section 4500, but by considering that section in pari materia with section 1006. The two sections, however, as has been seen are not in pari materia. We thus are required to look at and consider section 4500 as it stands by itself. As also has been seen, it in unmistakable terms authorizes a bank to give collateral security to secure a deposit of public funds. The act thus of giving collateral security in such case is in no sense unauthorized or an ultra vires act. The act in no particular places any restriction or limitation as to the kind or character of collateral security to be given. A bank pledging its own assets is just as much collateral security as is pledging or causing to be pledged property or a chose in action or of giving an independent obligation of another. The one is just as much embraced in the term "collateral security" as is the other. From the language used it is reasonable to presume both or either was intended. To hold that one may and that the other may not be given is to make a distinction not implied by the term "collateral security" and is to put a restriction or limitation upon it not made by the Legislature.

Our conclusion thus is that the bank when solvent, as admittedly it was when the deposits were made and the securities transferred and delivered to the county treasurer, had authority to pledge its assets as security for the deposit.

The judgment of the court below is therefore affirmed, with costs.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.