RUDEN, Superintendent of · Banks, Appellant, v. CITY OF PLATTE, Respondent.

(252 N. W. 32.)

(File No. 7488.   Opinion filed December 29, 1933.)

*Ward B. Dyer*, of Lake Andes, and *J. T. Grigsby*, Assistant Attorney General, for appellant.

*B. J. Murphy*, of Platte, and *Sutherland, Payne & Linstad*, of Pierre, for Respondent.

CAMPBELL, J. The sole question presented on this appeal is the validity and enforceability of a certain real estate mortgage or trust deed given by Farmers' State Bank of Platte to the city of Platte, a municipality.

All the facts are stipulated and those essential to an understanding of the case may be stated as follows:

On and prior to November 5, 1928, Farmers' State Bank of Platte was a banking corporation under the laws of this state engaged in business in the city of Platte. Said city, a duly incorporated municipality, had on deposit in the bank at that time a considerable amount of money. The city was demanding payment of its deposit, and the bank was desirous of retaining the same, and proposed to make satisfactory arrangements, meeting with the approval of the superintendent of banks of the state of South Dakota, for securing the city deposits. It was thereupon orally agreed between the bank and the city that the city would continue to use the bank as a depository. It was also agreed that sinking fund moneys on deposit and to be deposited in the bank should be in the nature of a time deposit not to be drawn on excepting at agreed intervals, and that the bank should pay 4 per cent interest thereon; and that other moneys deposited by the city should be subject to check at any and all times and the interest should be paid by the bank upon standing balances thereof at the rate of 2 per cent. It was further agreed that to secure said deposits the bank should execute and deliver to the city a mortgage or trust deed covering lot 4 in block 16 of the city of Platte, being the premises whereon its banking house was located, the same to be held by the city treasurer and not recorded. Pursuant to this agreement, the city continued to use the bank as a depository and the bank executed and delivered to the city an instrument denominated a trust deed as follows:

## "Trust Deed

"This indenture made this 5th day of November, 1928, between Farmers' State Bank of Platte, South Dakota, a Corporation, party

of the first part, and the City of Platte, a Municipal Corporation, Trustee, party of the second part:

"Witnesseth that whereas the said first party has on deposit certain funds belonging to said second party, and is desirous of securing the payment and return thereof upon due and timely demand by said second party; now therefore in consideration of the continuance of said deposit by said city, the first party does hereby grant, sell and convey to said city of Platte, the said second party, as Trustee, in trust for the purposes herein set forth that certain premises described as follows, to wit:

"Lot four (4) of block sixteen (16), of the city of Platte, Charles Mix County, South Dakota, to have and to hold the same in trust for the security and repayment of all deposits held by said first party belonging to said city.

"In case of the failure of the said first party to repay to said second party upon due demand such deposits and indebtedness secured herein, then this deed shall be treated as a mortgage and may be foreclosed by action as provided by law, for the purpose of paying the indebtedness secured thereby, and in such case, then the surplus arising from such sale, if any, shall be paid to the party of the first part after the payment of such indebtedness.

"Upon the payment to the second party by first party, upon demand, of all the deposits now held by said first party and belonging to said second party, this deed shall become null and void, and shall be returned to the first party."

It it stipulated that by mistake the instrument as drawn did not, in fact, comply with the oral understanding, and that, instead of being conditioned for the repayment only of deposits existing at the date thereof, it was intended to be and should have been conditioned, in substance, "for the security and repayment of all deposits hereafter made or now held by said first party belonging to said city." The entire arrangement, including the execution and delivery of the instrument above set out, was with the consent and permission and upon the written approval of the then superintendent of banks of the state of South Dakota. It is also stipulated as follows:

"That said mortgage or trust deed was given and accepted as additional security for said deposits and all of them, and was re-

newed and repledged each year, and said bank was duly designated each of said years as depository of the funds of said city and qualified as such depository by renewing and repledging said mortgage after 1928, as such security, until said bank was closed and taken over by said Superintendent of Banks.

"That both the said bank and the said City of Platte acted in good faith, believing that the said mortgage was due and legal security for the payment of said funds and the said city at all times relied upon said security and was assured by the said bank that said security was due and valid security and ample for the repayment of said funds, and the said city believed and relied upon said representations of said bank, continued its deposits in said bank and placed other large deposits therein."

On January 24, 1931, the bank suspended business and was taken in charge by the superintendent of banks for liquidation and continues in his charge. From November 5, 1928, until the bank closed, the city continued to be a depositor thereof, its deposit at no time exceeding the amount it could lawfully have in this bank and amounting when the bank closed to $22,007.59. Two days after the closing of the bank the city filed its trust deed for record. In August, 1931, the superintendent of banks, acting in charge of the bank in question, instituted the present proceeding in the form of an action to quiet title to the realty involved. Defendant city answered, setting up its trust deed, pleading the facts as aforesaid, and praying the reformation of the instrument to render the same applicable according to the oral understanding to subsequent deposits as well as to those existent at its date, and the foreclosure thereof. Findings, conclusions, and judgment were in favor of the city, and the superintendent of banks has appealed.

For a complete understanding of the contentions of the respective parties to this appeal, it is necessary to bear in mind the origin and history of certain portions of our statute law, which may be outlined as follows:

Section 8984, R. C. 1919, had its origin as section 33, art. 2, c. 222, Laws 1909. By this statute (subject to certain exceptions subsequently therein specified) it is and always has been provided, as set out in the first sentence thereof, that "no bank, banker or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security." The statute

was amended by section 37, article 2, chapter 102, Laws 1915; chapter 29, Laws 1918; chapter 124, Laws 1919; chapter 92, Laws 1925; chapter 53, Laws 1927; and chapter 50, Laws 1933, but the prohibition above quoted has never been omitted.

Section 6344, R. C. 1919, originated as section 122, chapter 119, Laws 1913 (the act providing for commission governed cities), and as first enacted provided that the board of city commissioners should annually designate a depositary for city funds, and that the board should require the depositary so selected "to furnish good and sufficient bonds or other security for the safe keeping and repayment of all money so deposited," the nature of the "other security" being in no manner specified. This statute was amended by chapter 272, Laws 1919; chapter 236, Laws 1925; and chapter 188, Laws 1929.

Two years after the inception of the act which presently became section 6344, there was passed the act providing for guaranty of deposits in state banks, being article 3, c. 102, Laws 1915, the history, origin, and operation of which are fully discussed in State ex rel Sharpe v. Smith (1931) 58 S. D. 22, 234 N. W. 764. By section 8 of the Bank Guaranty Law it was provided that no bank which had complied with the provisions of that law should "be required to give any further security or bond for the purpose of becoming a depository for any public funds." While this provision of the Bank Guaranty Law perhaps rendered it impossible to compel the furnishing of an undertaking in order to become a depositary, nevertheless, it did not prohibit the giving of such an undertaking nor render the same void if, in fact, given and taken and otherwise lawful. Lyman County v. Whitbeck (1929) 54 S. D. 317, 223 N. W. 204.

The 1925 Legislature attempted by chapter 99, Laws 1925, to repeal the Bank Guaranty Law, although such act never became effective because of the invocation of the referendum thereon. The same session of the Legislature passed chapter 236, Laws 1925, amending section 6344, R. C. 1919, and for the first time undertook to make any specification as to what particular securities might be required or taken by a municipality from its depositary bank. Chapter 236 provided that the municipality should require "a good and sufficient bond, approved by such governing body, or such other security as is hereinafter referred to, approved by such gov-

erning body, for the safe keeping and repayment of all money so deposited," and the act further provided: "Other security than a bond required furnished and approved under the provisions of this act shall consist of bonds, certificates of indebtedness, treasury certificates of the United States, bonds of any Federal Land Bank or Federal Intermediate Credit Bank or Joint Stock Land Bank of the United States, or bonds of any territorial or insular possession of the United States, or bonds or securities of any kind issued by the State of South Dakota, or bonds of any state or territory of the United States, or bonds of any school district or municipality within the State of South Dakota, or warrants of any county within the State of South Dakota." By further amendment, chapter 188, Laws 1929, the specification of securities that might be thus required, given, and taken was broadened by adding to the list thereof, as set out in chapter 236, Laws 1925, above quoted, the words "or other securities acceptable to the governing body."

As above stated, section 8984 had its origin in 1909 as part of the Banking Law of this state, while section 6344 originated in 1913 as part of the Municipal Corporation Law of this state. By the opinion of this court on rehearing in Hirning v. Toohey (November 15, 1926) 50 S. D. 457, 210 N. W. 723, it was held that section 6344 did not, in view of section 8984 and the then provisions of the Bank Guaranty Law, authorize a bank to pledge its assets to secure municipal deposits, the case arising prior to the amendment of section 6344 by chapter 236, Laws 1925.

After the decision in Hirning v. Toohey, supra, and perhaps to avoid any possibility that the reasoning of said decision might be availed of to prevent pledge of bank assets to secure muncipal funds even after the repeal of the Bank Guaranty Law and after the amendment of section 6344, by chapter 236, Laws 1925, the Legislature, for the first time, incorporated previously existing statutory provisions with reference to securing public funds into the banking law itself, amending section 8984 (by chapter 53, Laws 1927) to read in part as follows: "No bank shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security; provided, that a state bank may deposit with the Treasurer of the United States so much of its assets, not exceeding its capital and surplus, as may be necessary, under the Act of Congress approved June 25, 1910, and all amendments

thereof, to qualify as a depository for postal savings funds and other government deposits; and provided further that a State Bank may deposit as security for public moneys, with the State Treasurer, any county treasurer, or treasurer of any municipal corporation, or such trustee as may be agreed upon, any of the following securities: bonds, certificates of indebtedness, treasury certificates of the United States, bonds of any Federal Land Bank or Federal Intermediate Credit Bank or Joint Stock Land Bank of the United States or bonds of any territorial or insular possessions of the United States, or bonds, warrants or securities of any kind issued by the State of South Dakota, bonds or warrants of any county, township, school district, or municipal corporation, of the State of South Dakota, or first real estate mortgages on farm lands within said county, or bonds of any State or territory of the United States in order to qualify as depositaries of state, county and municipal funds." It may be noted that this 1927 amendment of section 8984 fails to include permission to deposit or pledge generally "other securities acceptable to the governing body," and it is to be noted that the 1929 Legislature when, by chapter 188, Laws 1929, they added those words to the list of securities permitted to be pledged pursuant to section 6344 as previously amended by chapter 236, Laws 1925, failed to make any corresponding change in or amendment of section 8984, as amended by chapter 53, Laws 1927 (and incidentally those words were not added to section 8984 when it was again amended by chapter 50, Laws 1933).

Upon this state of the law, the contentions of appellant in the instant case may be summarized as follows: That neither sections 8984 nor 6344 in their original form or as amended specifically authorizes a banking corporation to execute a mortgage upon its banking house as security for the deposit of municipal funds; that it is the public policy in this state that a bank shall not pledge its assets to secure deposits as indicated by the express prohibition which has always existed in the first sentence of section 8984 and as inferable from the decisions of this court in Hirning v. Toohey, supra, and in Smith v. First Nat. Bank of Sherman, 59 S. D. 320, 239 N. W. 842; that in consequence any statute permitting the pledging of assets to secure municipal deposits, being in derogation of the established public policy of this state, must be strictly construed, and any attempted furnishing of security for municipal

deposits which does not fall clearly and definitely within the express permission of the statute must be deemed ultra vires, contrary to public policy, and void.

Respondent, on the other hand, contends that, whatever may have been the case previously, at least since 1925 and the attempted repeal of the Bank Guaranty Law and the amendment of section 6344, by chapter 236, Laws 1925, as hereinbefore recited, it has been the public policy of this state that banks might pledge their assets as security for the deposit of municipal funds; that the statutes permitting such pledging of assets should be liberally construed; that the specification of assets which might be pledged in chapter 236, Laws 1925, and amendatory acts, was for the protection of the public funds, but not intended as a limitation upon the powers of the bank (Bliss v. Mason, 121 Neb. 484, 237 N. W. 581) ; that in consequence, the bank having given the mortgage in question as security for the deposit of the municipal funds, and the city having accepted and approved it, the transaction should be deemed valid, not ultra vires, and enforceable according to its terms.

It is not necessary in this case to decide the respective contentions of the parties as above set out in their broadest implications, and we shall not undertake so to do. Admittedly, neither section 8984 nor section 6344, nor any amendments of either, specifically authorize a bank to mortgage its banking house to secure municipal deposits. Whether a bank might lawfully pledge any assets whatever for the securing of municipal deposits other than such assets as are expressly set forth in the sections above mentioned and the amendatory acts, we do not now undertake to decide. All the assets which these statutes list as permissible to pledge for securing municipal deposits are what an accountant would denominate "current assets," that is, assets which in the ordinary course of the business will ultimately be converted into cash. The banking house of the corporation, on the other hand, is what the accountant would call a "fixed asset," that is, an asset which is essential to the continuance of the undertaking and the proper operation of the business. Whether or not banks in this state may pledge current assets, other than those specifically enumerated in the permissive statutes, for the securing of municipal deposits, we need not and do not now decide. We are convinced that there is

no statute of this state which expressly or by implication, upon any proper interpretation, authorizes or permits a bank to mortgage or hypothecate its fixed or capital assets as security for municipal deposits, and any attempt so to do must fall within the prohibition of the first sentence of section 8984, R. C. 1919, to the effect that no bank shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security. Whether a bank may pledge its assets to secure deposits, either public or private, in the absence of any statutes relating to the subject, is a question upon which the authorities are in conflict. See Annotations, 87 A. L. R. 1456 and cases cited; 65 A. L. R. 1412 and cases cited; 32 Col. Law Rev. 1065; State Bank, etc., v. Stone, 261 N. Y. 175, 184 N. E. 750; Pixton v. Perry, 72 Utah, 129, 269 P. 144; First Am., etc., v. Town of Palm Beach, 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398. Whatever may be the situation so far as concerns current assets, it is entirely certain that no bank which is compelled to resort to the secret hypothecation of its banking house to secure or retain the deposit of municipal funds is likely long to exist, and the public impolicy of such transactions is very plain. We are of the opinion that the transaction here involved is contrary to public policy, within the prohibition of the first sentence of section 8984, R. C. 1919, and without the permission, express or implied, of any statute of this state. It follows that the giving of the mortgage in question was ultra vires, and that the same is not enforceable as against the interests of creditors of the failed bank. Smith v. First Nat. Bank of Sherman, supra. The bank having failed and the controversy at the present time being, in substance, between respondent city and appellant as representing the rights of creditors of the failed bank, the position of the city cannot be aided by the fact that both the city and the bank may have believed that the transaction was legitimate and enforceable according to its terms when made or by the fact that the transaction was had with the knowledge and approval of the then superintendent of banks.

The judgment appealed from is therefore reversed, and the cause remanded, with directions to enter conclusions of law and judgment upon the present findings in favor of appellant as prayed for in the complaint.

All the Judges concur.