**FULTON, Superintendent of Banks of Ohio,
v. LLOYDS CASUALTY CO. et al.,
and five other cases. ***
Nos. 6551-6556.

Circuit Court of Appeals, Sixth Circuit.
Feb. 6, 1935.

M. P. Mooney, of Cleveland, Ohio (John W. Bricker, of Columbus, Ohio, on the brief), for Ira J. Fulton.

C. H. Royon, of Cleveland, Ohio (Stearns, Chamberlain & Royon, of Cleveland, Ohio, on the brief), for Lloyds Casualty Co. and Detroit Fidelity Co.

Marc J. Grossman and Alfred Clum, both of Cleveland, Ohio (Ezra Z. Shapiro and John A. Smith, both of Cleveland, Ohio, on

*Writ of certiorari denied, Squire v. Lloyds Casualty Co., 55 S. Ct. 655, 79 L. Ed. —.

the brief), for City of Cleveland and Board of Education.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

The Standard Trust Bank of Cleveland, a state bank organized under the laws of Ohio, made separate pledges to the Lloyds Casualty Company and the Detroit Fidelity & Surety Company of notes and mortgages owned by it to secure them against losses on depository bonds which they individually executed to the board of education of Cleveland, the city of Cleveland, the county of Cuyahoga, Ohio, the city of East Cleveland, the United States, and the town of Franklin, N. C. Thereafter, in December of 1931, the bank was taken over for liquidation by Ira J. Fulton, Superintendent of Banks of Ohio. The depositors not having been paid by Fulton, each of the surety companies brought suit against him asking that the notes and mortgages pledged to it be sold and the proceeds applied to the obligations due on the depository bonds which it had executed. The Guardian Casualty Company intervened in both cases, alleging that it was also a surety for the bank to the city of Cleveland, and that the pledges given to the other surety companies were held for its benefit as a cosurety. It asked that a part of the proceeds of the sale of the notes and mortgages be applied to its obligation to the city of Cleveland. Fulton filed answers alleging that the pledges were invalid as beyond the power of the bank to make. The cases were consolidated and heard together. The court directed a sale of the pledged securities and the application of the proceeds to the obligations of the depository bonds, decreeing that the Guardian Casualty Company was a cosurety with the Lloyds Casualty Company and the Detroit Fidelity & Surety Company upon the indebtedness due the city of Cleveland and entitled to an application of a part of the proceeds to its obligation to the city. These appeals followed.

The first question for decision is one of the power of the bank to pledge its assets to obtain a bond to indemnify depositors against losses on their deposits. It is conceded that the bank's power in this respect is measured by statutory authority. There is no statute in Ohio giving specific authorization. The surety companies contend that the power is conferred by section 710-47 (e) of the Ohio General Code. That statute gives a state bank authority "to do all needful acts, to carry into effect the objects for which it was created." It has never been construed by the highest court of Ohio with respect to a bank's right to pledge its assets to secure deposits. A statute of the United States (12 USCA § 24, Seventh), giving to a national bank the power "necessary to carry on the business of banking," has been construed by the Supreme Court of the United States as not authorizing a national bank to pledge its assets to secure a deposit of public funds. City of Marion v. Sneeden, 291 U. S. 262, 268, 54 S. Ct. 421, 78 L. Ed. 787. The language of the two statutes is substantially the same, and in the absence of an authoritative Ohio decision to the contrary, we think the Ohio statute should be given a construction similar to that given the federal act by the Supreme Court. There are statutes in Ohio, however, which authorize the custodian of state funds (General Code, 330-3), county funds (General Code, §§ 2722, 2726, 2732), city funds (General Code, § 4295 et seq.), and funds of a board of education of the state (General Code, §§ 7605, 7607), to protect the deposit of such funds in state banks by taking pledges or surety bonds therefor. See, also, General Code, § 2288-1. The statutes also provide in some instances that the custodian of the fund shall deposit it in bank. In our opinion these statutes authorizing a depositor of funds of the state and its subdivisions to take security therefor are to be treated as authorizing a state bank to pledge its assets to secure such deposits. Compare Pixton v. Perry, 72 Utah, 129, 269 P. 144; First Am. Bank & Trust Co. v. Palm Beach, 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398; Commercial Banking & Trust Co. v. Citizens' T. & G. Co., 153 Ky. 566, 575, 156 S. W. 160, 45 L. R. A. (N. S.) 950, Ann. Cas. 1915C, 166. In this view we think the pledges were authorized in so far as they were given to protect the surety companies against losses on their depository bonds executed to the board of education of Cleveland, the city of Cleveland, the county of Cuyahoga, and the city of East Cleveland. In Snider v. Fulton, 44 Ohio App. 238, 184 N. E. 839, a state bank failed and was placed in the hands of Fulton as liquidating agent. Fulton deposited the money of the bank in another bank and took municipal bonds as security therefor. The second bank failed later and was taken over for liquidation. The money which had been deposited in this bank was repaid to Fulton for the benefit of the first bank and the securities released. Suit was brought to compel Fulton to return

the money to the second bank. It was held that he did not have to return it, that it was a public fund, and that he had the right, when depositing it, to accept and the bank the power to give collateral to insure its return. This case confirms our view, as above expressed, that a state bank in Ohio has the power to pledge its assets to secure a deposit of funds of the state or a subdivision of the state. It is not to be read, however, nor are the statutes to which we have referred to be construed, as authorizing such a pledge to protect deposits of public funds other than those of the state of Ohio or one of its subdivisions. We think, therefore, that the bank was without authority to make the pledges here in question to protect the deposits of the United States and the town of Franklin, N. C.

It is contended by Fulton that while the bank could pledge its securities directly to secure deposits of funds of the state, it could not pledge them to a surety company in order to obtain a bond running to the depositor. If the bank could make the pledge to the depositor, we can see no reason why it could not make it to the surety company which assumed the obligation for it; indeed, the statutes to which we have referred not only authorize a direct pledge to secure the funds of the state, a county, a city, or a board of education, but also the giving of a surety bond. There can be no legal distinction between the pledging of a bank's assets to a depositor of public funds to protect such funds and the pledging of them to a surety company for a like purpose. Cf. Mothersead v. United States Fidelity & Guaranty Co., 22 F.(2d) 644, 653 (C. C. A. 8).

■ It is contended for the United States that the bankruptcy statutes (11 USCA § 101), requiring a trustee or referee in bankruptcy to take security for the deposit of bankruptcy funds, gave to the bank the power to give such security by pledging its assets to the surety companies therefor. We think the contention cannot be sustained, because the powers of a state bank cannot be enlarged by the federal law, but are to be measured, as we have stated, by the authority of the statutes of the state under which the bank was organized, and there being nothing in the Ohio statutes which authorized the Standard Trust Bank to pledge its assets to secure the deposit of public funds other than the funds of the state or one of its subdivisions, it was without power or authority to make the pledges as to the funds deposited by the referees and trustees in bankruptcy.

■ The trial court permitted the Guardian Casualty Company to share in the pledges to the extent of its obligation to the city of Cleveland on the theory that the bond which it gave to the city was executed at practically the same time as Lloyds and the Detroit Company executed their bonds, and that the three of them secured the same deposits. There are cases which seem to support this view. They apply the old rule applicable to accommodation indorsers, where it is held that if one such indorser takes security, it is for the benefit of all. Other cases hold that as between paid sureties the one who takes the security is entitled to apply it to his own demands without sharing it with others. There is no Ohio decision which we would feel warranted in following as between the conflicting authorities. Perhaps the latest case on the subject is National Surety Co. v. Franklin Trust Co., 313 Pa. 501, 170 A. 683, where it was held that equity did not require the sharing of a pledge between paid sureties. There can be no doubt that Lloyds and the Detroit Company had the right to fix the terms upon which they would execute the depository bonds. This they did. There was no showing of fraud or that the pledges were taken for the benefit of the Guardian Company as well as for themselves. Lacking such a showing, they should not be required to cede the fruits of their diligence to the Guardian Company.

The decrees are affirmed so far as they order the sale of the pledged securities and the application of the proceeds to the obligations on the bonds executed by the Lloyds Casualty Company and the Detroit Fidelity & Surety Company to the board of education of Cleveland, the city of Cleveland, the county of Cuyahoga, and the city of East Cleveland, but are reversed so far as they allocate a part of such proceeds to the United States, the town of Franklin, N. C., and the obligation of the Guardian Casualty Company on its bond executed to the city of Cleveland.